1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DELANEY GERAL MARKS,

　　　　　Petitioner,

　　v.

RON DAVIS, Warden, California State
Prison at San Quentin

　　　　　Respondent.

Case No. 11-CV-02458-LHK

**ORDER DENYING CLAIM 4**

Re: Dkt. Nos. 62, 63

In 1994, Petitioner Delaney Geral Marks ("Petitioner") was convicted of two counts of first degree murder with personal use of a firearm, and two counts of attempted premeditated murder and infliction of great bodily injury, and sentenced to death. On December 14, 2011, Petitioner filed a petition for a writ of habeas corpus before this Court. ECF No. 3 ("Pet.").

The Court has ruled on 8 of Petitioner's 22 claims. *See* ECF Nos. 52, 74, 75. This Order addresses Claim 4 of the petition. Petitioner requests an evidentiary hearing as to this claim. For the reasons discussed below, Claim 4 is DENIED, and Petitioner's request for an evidentiary hearing is DENIED.

I.      **BACKGROUND**

A. **Factual Background**[1]

On October 17, 1990, Petitioner entered a Taco Bell restaurant in Oakland, California. After ordering, he shot employee Mui Luong ("Luong") in the head.  Luong survived the shooting but remained in a persistent vegetative state.  Petitioner then entered the Gourmet Market, not far from the Taco Bell.  There, Petitioner shot John Myers ("Myers") and Peter Baeza ("Baeza"). Baeza died at the scene but Myers survived.  Later that evening, Petitioner and his girlfriend, Robin Menefee ("Menefee"), took a cab driven by Daniel McDermott ("McDermott").  Petitioner shot and killed McDermott.  *Marks I*, 31 Cal. 4th at 204–06.

Petitioner was arrested shortly after McDermott was shot.  Lansing Lee ("Lee"), a criminalist, testified at trial with "virtual absolute certainty" that the bullets that shot Baeza and Myers came from Petitioner's gun.  *Id.* at 207.  Lee also testified that his analysis "indicated" that the bullet that shot McDermott came from Petitioner's gun and "suggested" that the bullet that injured Luong also came from the same source.  *Id.*  Eyewitness testimony also identified Petitioner as the shooter.  *Id.* at 204–07.  Additionally, Petitioner was overheard telling another defendant that "he was in for three murders" and that the victims had died because "I shot them." *Id.* at 208.

Petitioner testified and denied all of the shootings.  *Id.* at 207.  The defense also presented evidence that Petitioner's hands did not test positive for gunshot residue.  *Id.* at 208.

On April 24, 1994, the jury convicted Petitioner of two counts of first degree murder with personal use of a firearm, and two counts of attempted premeditated murder with personal use of a firearm and infliction of great bodily injury.

During the penalty phase, the prosecutor presented in aggravation evidence of Petitioner's past violent conduct, including incidents of domestic violence and violent conduct while

---

[1] The following facts are taken from the California Supreme Court's opinion on direct appeal. *See People v. Marks ("Marks I")*, 31 Cal. 4th 197, 203–14 (2003).  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

2

United States District Court
Northern District of California

incarcerated. *Id.* at 208–10. The prosecutor also presented evidence of the effect of the murders on the families of the victims. *Id.* at 210–12. In mitigation, Petitioner testified as to his history of seizures. *Id.* at 212. Other witnesses testified that Petitioner had grown up in a strong family environment, and had not engaged in problematic behavior until he was discharged from the army and began using drugs. *Id.* at 212–13. Petitioner's daughter testified that Petitioner had never hit her, and that she saw him regularly when he was not incarcerated. *Id.* at 213. On May 6, 1994, the jury set the penalty for the capital crimes at death. *Id.* at 203.

### B. Procedural History

On January 31, 1992, while awaiting trial, Petitioner moved under California Penal Code section 1368 to suspend the criminal proceedings against him in order to determine whether he was competent to stand trial. AG000943–44, AG000946–47.[2] On July 22, 1992, after a month-long trial, a jury found Petitioner competent to stand trial. AG001257. On January 21, 1994, three days before jury selection for his capital murder trial was set to begin, Petitioner filed a second motion to suspend the proceedings and determine his competency, AG011558, AG011563–64, which the trial judge denied three days later, AG011586–87. On March 28, 1994, during the guilt phase of Petitioner's trial, Petitioner filed a third motion to suspend the proceedings and have his competency evaluated. AG014987–90. The trial judge denied the motion on March 29, 1994. AG015298. On April 7, 1994, after Petitioner testified in the guilt phase of the trial, defense counsel again requested a competency evaluation, which the trial court denied that same day. AG016200, AG016204–09.

On April 13, 1994, Petitioner was convicted of two counts of first degree murder with personal use of a firearm, and two counts of attempted premeditated murder and infliction of great bodily injury. AG016577–83. On May 6, 1994, after a penalty phase trial, the jury returned a verdict of death, as well as terms of imprisonment on the charges. AG017687–89.

On July 24, 2003, the California Supreme Court affirmed the conviction and sentence on

---

[2] Citations to "AG" refer to the Bates-stamped page numbers identified in the California Attorney General's lodging of the state court record with this Court.

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 4

1    direct appeal. *Marks I*, 31 Cal. 4th 197.  The U.S. Supreme Court denied certiorari on May 3,

2    2004.  *Marks v. California*, 541 U.S. 1033 (2004).

3         Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  On

4    March 16, 2005, that Court ordered Respondent to show cause in the Alameda County Superior

5    Court why the death sentence should not be vacated and Petitioner re-sentenced to life without

6    parole on the ground that Petitioner was intellectually disabled[3] within the meaning of *Atkins v.*

7    *Virginia*, 536 U.S. 304 (2002), which held that intellectually disabled individuals may not be

8    executed.  AG023690.  The California Supreme Court denied the remaining claims in the petition

9    on the merits without explanation.  In addition to the merits decision, as separate and independent

10   grounds for denial, the California Supreme Court held that four of Petitioner's claims were

11   procedurally barred.

12        The Alameda County Superior Court conducted an evidentiary hearing on the issue of

13   Petitioner's alleged intellectual disability.  On June 13, 2006, the Superior Court denied the

14   petition, and found that Petitioner had failed to prove by a preponderance of the evidence that he is

15   intellectually disabled within the meaning of *Atkins*.  AG023700–22.  On August 14, 2006,

16   Petitioner filed a further petition for writ of habeas corpus on the issue of his intellectual disability.

17   The petition was denied by the California Supreme Court on December 15, 2010.  AG028382.

18        On December 14, 2011, Petitioner filed his federal petition for writ of habeas corpus in this

19   Court.  ECF No. 3.  Responent filed a motion for summary judgment on Claims 2, 3, and 5 on

20   March 26, 2013.  ECF No. 37.  Petitioner cross-moved for summary judgment on Claims 2, 3, and

21   5 on March 28, 2013.  ECF No. 38.  In Claim 2, Petitioner asserted that he was denied a fair,

22   reliable, and adequate determination of his competency in his June–July 1992 competency trial.  In

23   Claim 3, Petitioner argued that his due process rights were violated by the trial court's repeated

24   refusal to reassess Petitioner's competency.  Finally, in Claim 5, Petitioner contended that he is

25

26   ───────────────
     [3] At the time *Atkins* was decided, the condition at issue was known as "mental retardation," but the
     U.S. Supreme Court recently announced that it would henceforth use the term "intellectual
27   disability."  *Hall v. Florida*, 134 S. Ct. 1986, 1990 (2014).  This Court will do the same, except
     when quoting from the record.
28
                                                        4

ineligible for the death penalty because Petitioner is intellectually disabled.  Both Petitioner and Respondent filed opposition briefs on June 10, 2013.  ECF Nos. 44, 45.  On August 8, 2013, Petitioner and Respondent filed reply briefs.  ECF Nos. 48, 49.  On June 25, 2015, the Court denied Claims 2, 3, and 5 and granted summary judgment to Respondent.  *Marks v. Davis ("Marks II")*, 112 F. Supp. 3d 949 (N.D. Cal. 2015), ECF No. 52.

On December 15, 2015, Petitioner and Respondent filed opening briefs on the merits as to Claims 1, 4, 6, 7, 8, 9, 10, and 11.  ECF No 62 ("Resp't's Br."); 63 ("Pet'r's Br.").  Petitioner filed a response on February 11, 2016, ECF No. 64 ("Pet'r's Opp."), and Respondent filed a response on February 12, 2016, ECF No. 65 ("Resp't's Opp.").  The Court denied Claims 1, 6, and 7 on September 15, 2016.  ECF No. 74.  The Court denied Claims 9 and 11 on September 20, 2016.  ECF No. 75.  The Court will address Claims 8 and 10 in separate orders.

## II.    LEGAL STANDARD

### A.  Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))

Because Petitioner filed his original federal habeas petition in 2011, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief on a claim adjudicated on the merits in state court only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

#### 1.  Contrary To or Unreasonable Application of Clearly Established Federal Law

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs have separate and distinct meanings.  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.").  A state court's decision is

1   "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to

2   that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case

3   differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Id.* at

4   412–13.

5         A state court's decision is an "unreasonable application" of clearly established federal law

6   if "the state court identifies the correct governing legal principle . . . but unreasonably applies that

7   principle to the facts of the prisoner's case." *Id.* at 413.  "[A]n *unreasonable* application of federal

8   law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86,

9   101 (2011).  A state court's determination that a claim lacks merit is not unreasonable "so long as

10  'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541

11  U.S. 652, 664 (2004)).

12        Holdings of the U.S. Supreme Court at the time of the state court decision are the sole

13  determinant of clearly established federal law. *Williams*, 529 U.S. at 412.  Although a district

14  court may "look to circuit precedent to ascertain whether [the circuit] has already held that the

15  particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*,

16  133 S. Ct. 1446, 1450 (2013) (per curiam), "[c]ircuit precedent cannot refine or sharpen a general

17  principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S.

18  Ct. 1, 4 (2014) (per curiam) (internal quotation marks omitted).

19        **2.   Unreasonable Determination of the Facts**

20        In order to find that a state court's decision was based on "an unreasonable determination

21  of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel,

22  applying the normal standards of appellate review, could not reasonably conclude that the finding

23  is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir.

24  2014) (internal quotation marks omitted).  "[A] state-court factual determination is not

25  unreasonable merely because the federal habeas court would have reached a different conclusion

26  in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  That said, "where the state courts

27  plainly misapprehend or misstate the record in making their findings, and the misapprehension

28
Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 4

1  goes to a material factual issue that is central to petitioner's claim, that misapprehension can

2  fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable."

3  *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

4        In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or

5  § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that

6  adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In the event

7  that a federal court "determine[s], considering only the evidence before the state court, that the

8  adjudication of a claim on the merits resulted in a decision contrary to or involving an

9  unreasonable application of clearly established federal law, or that the state court's decision was

10  based on an unreasonable determination of the facts," the federal court evaluates the petitioner's

11  claim *de novo*. *Hurles*, 752 F.3d at 778. If error is found, habeas relief is warranted if that error

12  "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

13  *Abrahamson*, 507 U.S. 619, 638 (1993). Petitioners "are not entitled to habeas relief based on trial

14  error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United*

15  *States v. Lane*, 474 U.S. 438, 449 (1986)).

16    **B. Federal Evidentiary Hearing (28 U.S.C. § 2254(e))**

17        Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was

18  before the state court that adjudicated the claim on the merits." 563 U.S. at 180–81. The Ninth

19  Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on

20  claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir.

21  2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court

22  has declined to decide whether a district court may ever choose to hold an evidentiary hearing

23  *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once

24  the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks

25  and citation omitted).

26  **III.   DISCUSSION**

27        In Claim 4, Petitioner contends that Petitioner was unconstitutionally tried while

28        7

incompetent.  Pet'r's Br. at 8–17.  Specifically, Petitioner argues that Petitioner was unable to understand the proceedings against him or rationally cooperate with counsel at the time of trial. *Id.* at 8.

Petitioner presented this claim in his state habeas petition, and the California Supreme Court rejected the claim on the merits without explanation.  *See* AG023690.  Under *Richter*, the California Supreme Court's decision constitutes a merits adjudication subject to AEDPA deference.  562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").  Respondent contends that the California Supreme Court's decision was not contrary to or an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts.  Resp't's Br. at 8–12.

A criminal defendant has a constitutional due process right not to be tried or convicted while incompetent to stand trial.  This right assures that a defendant has: (1) a rational, as well as a factual, understanding of the nature of the proceedings against him; and (2) the present ability to consult with his lawyer with a reasonable degree of rational understanding and to assist with the preparation and presentation of his defense.  *See Drope v. Missouri*, 420 U.S. 162, 171–72 (1975) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)).  Protecting this right is "fundamental to an adversary system of justice."  *Id.* at 172.

To that end, federal courts recognize two types of competency claims: procedural and substantive.  *Lounsbury v. Thompson*, 374 F.3d 785, 788 (9th Cir. 2004).  The former type of claim arises where a state trial court fails to hold a competency hearing even though the record before the trial court indicates a "bona fide doubt" about the petitioner's competence.  *Id.*  A bona fide doubt exists when "substantial evidence" of incompetence exists on the record before the trial court.  *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004).  The latter type of claim asserts that a petitioner was in fact incompetent such that the verdict was obtained in violation of due process. *See Williams v. Woodford*, 384 F.3d 567, 603–10 (9th Cir. 2004) (reviewing both types of claims).

In the instant case, the Court has already considered two "procedural" competency claims.

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 4

United States District Court
Northern District of California

In Claim 2, Petitioner asserted that he was denied a fair, reliable, and adequate determination of his competency in his June–July 1992 competency trial. In Claim 3, Petitioner argued that his due process rights were violated by the trial court's repeated refusal to reassess Petitioner's competency. Petitioner incorporates his Claims 2 and 3 allegations in the instant claim. Pet. at 89.

On June 25, 2015, the Court denied Claims 2 and 3. *Marks II*, 112 F. Supp. 3d at 960–81. In considering these claims, the Court reviewed "the evidence that was before the trial judge."[4] *Davis*, 384 F.3d at 644 (standard for reviewing procedural competency claims). As to Claim 2, the Court denied Petitioner's claim that Petitioner received inadequate psychiatric assistance, ineffective assistance of counsel, and inadequate fact-finding procedures at the 1992 competency trial. *Id.* at 959–69. The Court noted that the evidence presented at the 1992 competency trial of Petitioner's competence was "quite strong, including statements Petitioner had made demonstrating that he was well aware of the nature of the proceedings against him and the potential punishments he faced." *Id.* at 965.

As to Claim 3, the Court rejected Petitioner's argument that the capital murder trial court should have reassessed Petitioner's competency. The Court found that "Petitioner behaved at trial as if he understood the nature and purpose of the proceedings against him and was capable in assisting in his defense" and "it was not unreasonable for the trial court to have determined that the totality of the evidence did not raise a bona fide doubt as to Petitioner's competence to stand trial." *Id.* at 981; *see also id.* at 972 (noting that clearly established federal law requires a competency hearing to be held when there is "bona fide doubt" as to the defendant's competence).

Now, in Claim 4, Petitioner asserts "substantive" incompetence. Specifically, Petitioner claims that, notwithstanding the adequacy of the competency trial and the reasonableness of the trial court's decision not to hold a second competency hearing, Petitioner was actually incompetent at trial. Pet'r's Br. at 8–17. In deciding a claim of substantive incompetence, the

---

[4] Judge Michael Ballachey of the Alameda County Superior Court presided over Petitioner's 1992 competency trial while Judge Jeffrey Horner of the Alameda County Superior Court presided over the guilt and penalty phases of Petitioner's capital murder trial.

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 4

United States District Court
Northern District of California

United States District Court
Northern District of California

Court "may consider facts and evidence that were not available to the state trial court before and during trial." *Williams*, 384 F.3d at 603–10.  Petitioner contends that, in light of this evidence, the California Supreme Court's denial of Claim 4 was an unreasonable determination of the facts. Accordingly, the question presented by the instant claim is whether it was objectively unreasonable for the California Supreme Court to conclude, based on the evidence in the record before it, that Petitioner had "sufficient ability to consult with his lawyer with a reasonable degree of rational understanding, [and] a rational and factual understanding of the proceedings against him." *Williams*, 384 F.3d at 608 (citing *Dusky*, 362 U.S. at 402).  "[R]etrospective determinations of incompetence" are "disfavor[ed]," and Petitioner must present "persuasive evidence" of incompetence.  *Id.* at 608.

In the June 25, 2015 order on Claims 2 and 3, the Court considered much of the evidence that Petitioner presents in support of the instant claim.  Below, the Court first addresses the contemporaneous evidence regarding competency, which the Court examined in the June 25, 2015 order.  The Court then addresses the evidence that Petitioner gathered post-conviction, which the Court has not previously examined.

### 1.   Contemporaneous Evidence

In the June 25, 2015 order, the Court examined the following evidence: (1) Petitioner's 1992 competency trial, including the testimony of experts Karen Gudiksen, M.D., Fred Rosenthal, M.D., and David Stein, Ph.D., that Petitioner was incompetent; (2) Petitioner's defense counsel's opinion that Petitioner was incompetent; (3) Petitioner's disruptive behavior and nonresponsive testimony during the guilt phase of trial; and (4) a judge in a separate criminal proceeding against Petitioner ordered Petitioner to be certified for a competency evaluation.  In the June 25, 2015 order, this Court noted that, on direct review in 2003, the California Supreme Court upheld the jury's finding of competency in the 1992 competency trial based on the "abundant evidence" contradicting the expert testimony offered by Drs. Gudiksen, Rosenthal, and Stein.  *Marks II*, 112 F. Supp. 3d at 965, 980 (citing *Marks I*, 31 Cal. 4th at 219).  Further, the Court found that "Petitioner behaved at trial as if he understood the nature and purpose of the proceedings against

10

1    him and was capable in assisting in his defense." *Id.* at 981.

2         For the reasons outlined in the June 25, 2015 order, the Court concludes that, based on the

3    contemporaneous evidence before the trial court, "it was not unreasonable for the trial court to

4    have determined that the totality of the evidence did not raise a bona fide doubt as to Petitioner's

5    competence to stand trial." *Id.*  Moreover, in light of this contemporaneous evidence of

6    Petitioner's competence, a retroactive finding of actual incompetence is "disfavor[ed]" and

7    Petitioner must offer "persuasive evidence" that Petitioner actually was incompetent at trial.

8    *Williams*, 384 F.3d at 603–10.

9         **2.  Post-Conviction Evidence**

10        Petitioner argues that evidence gathered post-conviction demonstrates that Petitioner was

11   incompetent during trial.  Petitioner cites: (1) post-conviction declarations submitted by Drs.

12   Gudiksen, Rosenthal, and Stein that reaffirm these experts' 1992 evaluations of Petitioner as

13   incompetent; (2) post-conviction evaluations of Petitioner conducted by Karen Froming, Ph.D.,

14   George Woods, M.D., and Ruben Gur, Ph.D., who opine that Petitioner was incompetent at trial;

15   (3) post-conviction declarations of lay witnesses, who observed Petitioner's allegedly bizarre

16   behavior during trial; and (4) Petitioner's involuntary medication regime during trial.  The Court

17   examines this evidence in turn.

18        **a.  Post-Conviction Declarations of Drs. Gudiksen, Rosenthal, and Stein**

19        In post-conviction declarations prepared in 2002 and 2003, years after Petitioner's 1992

20   competency trial and 1994 capital trial, Drs. Gudiksen, Rosenthal, and Stein each state that a

21   review of the trial transcript supports their 1992 evaluations of Petitioner as incompetent.  First,

22   Dr. Gudiksen states that "the transcripts of [Petitioner's] statements and testimony during trial

23   reflect the functional impact of his disorders and demonstrate that he was mentally incompetent to

24   stand trial."  AG023588.  Second, Dr. Rosenthal declares, "[Petitioner's] inability to restrain his

25   speech output and other behaviors during trial, his comments in support of his efforts to discharge

26   his attorneys and his testimony in the guilt and penalty phases of his trial all provide reliable

27   clinical data that he was mentally incompetent."  AG023066.  Lastly, Dr. Stein explains that his

28
     Case No. 11-CV-02458-LHK
     ORDER DENYING CLAIM 4

11

United States District Court
Northern District of California

1   review of the trial transcripts "further support[s] [Dr. Stein's] opinion regarding [Petitioner's]

2   incompetency."  AG023083.

3        For the reasons stated in the June 25, 2015 order, Drs. Gudiksen's Rosenthal's, and Stein's

4   1992 evaluations are insufficient to raise doubt about Petitioner's competence in light of the other

5   evidence in the record, including the California Supreme Court's finding that "abundant" evidence

6   contradicted these experts' testimony at the 1992 competency hearing and that a jury found

7   Petitioner to be competent to stand trial after considering these experts' testimony.

8        Moreover, for the reasons stated in the June 25, 2015 order, it is not unreasonable to view

9   Petitioner's interruptions of the guilt phase proceedings and Petitioner's guilt phase testimony as

10  showing that Petitioner "comprehended not just the nature of the proceedings but the state of the

11  People's case and its potential deficiencies.  [Petitioner] also demonstrated his ability to offer

12  assistance to counsel, even if such assistance was neither solicited nor welcomed."  *Marks II*, 112

13  F. Supp. 3d at 977 (quoting *Marks I*, 31 Cal. 4th at 221).  Although Drs. Gudiksen's, Rosenthal's,

14  and Stein's interpretation of the guilt phase transcript to support a finding of Petitioner's

15  incompetence also may be reasonable, the reasonableness of these experts' interpretation does not

16  render any contrary interpretation of that evidence objectively unreasonable under AEDPA.  The

17  U.S. Supreme Court has held that "[r]easonable minds reviewing the record might disagree about

18  the [state court's factual finding], but on habeas review that does not suffice . . . ."  *Rice v. Collins*,

19  546 U.S. 333, 341–42 (2006).

20       Further, nothing in the penalty phase transcript clearly demonstrates incompetence.

21  During the penalty phase, Petitioner was less disruptive than during the guilt phase.  Petitioner's

22  limited penalty phase interruptions could reasonably be interpreted as rational efforts to make

23  points that he felt needed to be made.  For example, during the penalty phase, the prosecutor

24  presented in aggravation testimony from one of the victim's daughters.  Petitioner first objected

25  that the testimony lacked foundation.  The following colloquy then occurred:

26       [MR. BURR, THE PROSECUTOR]: What saddens you the most about your
         father's death?

27

28                                           12

United States District Court
Northern District of California

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 4

1

2

[THE WITNESS]: I think the fact that his life was taken away from him for no reason.  He was on his job, he was doing as he would usually do, or maybe even helping this person out, I don't know what the circumstances were that night, but he was doing what –

3

THE DEFENDANT: He was selling me cocaine.

4

[THE WITNESS]: But he was doing what he normally does, and to have his life taken from him just because you felt like it.

5

AG016866–67.

6

7

After the witness's testimony concluded, the following colloquy occurred outside of the presence of the jury:

8

9

10

11

12

THE COURT: Mr. Marks, I'm only going to say this to you one time, and one time only.  You have disrupted these proceedings twice in the middle of the testimony of this last witness.  I have told you repeatedly on other occasions in this trial that I would not hesitate to have you removed from this courtroom if you disrupted these proceedings.  Now you have done so this morning.  I did not have you taken from this courtroom, but I am telling you this and you hear me and believe me.  If you utter one more word during the course of the testimony that disrupts these proceedings I will have you removed.  Do you understand me?

13

THE DEFENDANT: I understand.  But you see Mr. Burr has told –

14

THE COURT: Do you understand me? Yes or no?

15

16

THE DEFENDANT: Yeah I understand you, but you understand what I'm saying? He told a false conviction now.  He was selling cocaine.  This man was selling cocaine.  He does –

17

THE COURT: Mr. Marks, I'm going to say it –

18

THE DEFENDANT: When he goes or something he had all the, this jewelry he was wearing, he was struggling for robbery, why don't nobody ever hear me or listen.

19

. . .

20

21

THE COURT: [I]f you disrupt these proceedings again that will be the last time.  I will have you taken out of this courtroom, because we will not tolerate, I will not tolerate having these proceedings disrupted.  Now do you understand that?

22

23

THE DEFENDANT: Yeah.  How can Mr. Burr undermine to prejudice the jurors? That's bias.  That's not being impartial on my behalf.  That's not being impartial to the defendant, you know.  How –

24

THE COURT: We'll be in recess.

25

AG016869–70.

26

The above passages could be reasonably interpreted to show Petitioner's attempt to curry

27

favor with the jury by undermining sympathy for the victim's family, and to correct what

28

13

1    Petitioner believes to be false testimony.  Although disruptive, Petitioner's interruption does not

2    demonstrate that Petitioner lacked a reasonable degree of rational understanding of the nature and

3    object of the proceedings.  *See Davis*, 384 F.3d at 645 ("Although there is little doubt that [habeas

4    petitioner] was recalcitrant and acted in ways that were detrimental to his case, his interactions

5    with the trial judge indicated that he understood what was at stake during the penalty phase and

6    could make informed decisions.").  Thus, although Drs. Gudiksen, Rosenthal, and Stein

7    interpreted the guilt and penalty phase transcripts as supporting a finding of incompetence, it

8    would not have been unreasonable for the California Supreme Court to conclude otherwise, based

9    on the record.  *See Drope*, 420 U.S. at 179 (explaining that "a defendant's demeanor during trial

10   may be such as to obviate the need for extensive reliance on psychiatric prediction concerning his

11   capabilities" (internal quotation marks omitted)).

12                  **b.  Post-Conviction Evaluations of Drs. Froming, Woods, and Gur**

13           Next, Petitioner cites the post-conviction declarations of Drs. Froming, Woods, and Gur,

14   each of whom opines that Petitioner was incompetent at trial based on post-conviction testing and

15   clinical interviews.  Specifically, Dr. Froming is a clinical psychologist.  AG022962.  At an

16   unspecified time before Dr. Froming prepared her declaration in 2002, Dr. Froming conducted a

17   "clinical evaluation" of Petitioner.  AG022964.  Based on this information, as well as Petitioner's

18   history, medical records, the evaluations of Drs. Gudiksen, Rosenthal, and Stein, and the trial

19   transcripts, Dr. Froming opines that Petitioner suffers from a neuropsychiatric disorder in 2002

20   that would have constituted "a significant obstacle to [Petitioner's] understanding of the [trial]

21   proceedings or his rational participation in his own defense."  AG022978, AG022980.  Based on

22   the trial transcripts, Dr. Froming opines that Petitioner's neuropsychiatric disorder is of the "same

23   severity now" as it was during Petitioner's trial.  AG022979.

24           Dr. Woods is a physician specializing in psychiatry and neuropsychiatry.  AG023133.  Dr.

25   Woods conducted a clinical interview with Petitioner sometime after the conviction and before Dr.

26   Woods prepared his declaration in 2002.  AG023134.  Dr. Woods also reviewed, among other

27   materials, Petitioner's social history, medical records, evaluations prepared by Drs. Froming,

28

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 4

United States District Court
Northern District of California

1    Gudiksen, Rosenthal, and Stein, and "numerous court transcripts." AG023134–35. Dr. Woods

2    states that Petitioner's "clinical profile" in 2002 meets the criteria for schizoaffective disorder, and

3    opines that Petitioner first manifested symptoms of schizoaffective disorder before the capital trial

4    in 1994. AG023141, AG023161–62. Dr. Woods also believes that Petitioner suffered from

5    cognitive deficits and mood disorders at the time of trial, and notes the consistency between

6    Petitioner's psychological evaluations before and after trial. AG023153 ("Dr. Froming's testing

7    reinforced Dr. Stein's findings, and elaborated on Dr. Stein's findings in some instances.");

8    AG023158.

9         Lastly, Dr. Gur is a clinical and research psychologist. AG023592. Dr. Gur reviewed

10   Petitioner's social history, the testing data of Dr. Froming and Dr. Stein, numerous declarations

11   from other experts, family members, and friends, and excerpts of Petitioner's testimony. Dr. Gur

12   also conducted a clinical interview with Petitioner on November 4, 2003, and reviewed

13   neuropsychological testing data from tests administered by Dr. Gur's assistant earlier that year.

14   AG023594. In Dr. Gur's 2003 declaration, Dr. Gur concludes that Petitioner suffers in 2003 from

15   schizophrenia, disorganized type, post-traumatic stress disorder, and mental retardation.

16   AG023601. Dr. Gur states that these neurological impairments were manifest during trial, and

17   "the functional impact of [Petitioner's] impairments prevented [Petitioner] from understanding the

18   nature of the proceedings or rationally assisting in his defense." AG023602.

19        To summarize, Drs. Froming, Woods, and Gur rely upon and corroborate the findings of

20   Drs. Gudiksen, Rosenthal, and Stein. As explained above, in the June 25, 2015 order, this Court

21   concluded that it would not be unreasonable, considering the contemporaneous evidence of

22   Petitioner's competency, to find that Petitioner was competent despite Drs. Gudiksen, Rosenthal,

23   and Stein. *Marks II*, 112 F. Supp. 3d at 980–81 (noting that "Petitioner behaved at trial as if he

24   understood the nature and purpose of the proceedings against him and was capable in assisting in

25   his defense" and that the California Supreme Court detailed the "abundant evidence" of

26   Petitioner's competency). Given that conclusion, it would not have been unreasonable for the

27   California Supreme Court to give less weight to the conclusions of Drs. Froming, Woods, and

United States District Court
Northern District of California

28

15

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 4

1    Gur, which rely upon and corroborate Drs. Gudiksen, Rosenthal, and Stein.

2        Moreover, that Petitioner was diagnosed with additional neurocognitive deficits, mental

3    illness, and psychosis by Drs. Froming, Woods, and Gur in 2002 and 2003, years after the 1992

4    competency trial and 1994 capital trial, is not determinative of incompetence.  The U.S. Supreme

5    Court has recognized that those with intellectual disabilities "frequently . . . are competent to stand

6    trial."  *Atkins*, 536 U.S. at 318; *see also Boyde v. Brown*, 404 F.3d 1159, 1166–67 (9th Cir.)

7    (noting that people with mental deficiencies are not necessarily incompetent to stand trial),

8    *amended in other respects*, 421 F.3d 1154 (9th Cir. 2005).  Thus, evidence of Petitioner's mental

9    illness and cognitive impairment in 2002 and 2003, and opinions that Petitioner was mentally and

10    cognitively impaired in 1992 and 1994, are not conclusive of Petitioner's competence.  *See Davis*,

11    384 F.3d at 647 (finding that diagnosis of "hysterical conversion disorder" did not reflect on

12    competency to participate in the proceedings); *Chioino v. Kernan*, 2006 WL 2844917, at *9 (N.D.

13    Cal. Oct. 2, 2006) ("The medical records . . . do show a person with serious mental illness, but do

14    not establish [the petitioner's] mental incompetence.").

15        The Court notes that in *de Kaplany v. Enomoto*, 540 F.2d 975, 983–85 (9th Cir. 1976), the

16    Ninth Circuit held that evidence of two emotional and inappropriate outbursts at trial, coupled

17    with the bizarre and gruesome nature of the crime charged, and psychiatric testimony

18    characterizing the defendant as "severely disturbed" and suffering from paranoid schizophrenia,

19    was insufficient to raise a bona fide doubt with respect to the defendant's competency to stand trial

20    and thus insufficient to trigger a competency hearing.  In this case, similarly, experts have offered

21    evidence that Petitioner suffers from mental illness and stated that, in their opinions, Petitioner is

22    incompetent.  However, Petitioner did not engage in irrational, erratic behavior at trial, but rather

23    acted "as if he understood the nature and purpose of the proceedings against him and was capable

24    in assisting in his defense."  *Marks II*, 112 F. Supp. 3d at 981.  Further, a jury found Petitioner to

25    be competent after hearing considerable expert and lay testimony, including the testimony of

26    experts who opined that Petitioner was incompetent.  *See id.*  In light of this evidence of

27    competence, and that fact that retroactive determinations of competency are "disfavor[ed]," the

28

United States District Court
Northern District of California

16

United States District Court
Northern District of California

1    Court can not say that the California Supreme Court was unreasonable in finding that the

2    declarations of Drs. Froming, Woods, and Gur are not "persuasive evidence" that Petitioner was

3    incompetent at trial. *Williams*, 384 F.3d at 610.

4              **c.   Post-Conviction Declarations of Lay Witnesses**

5              Petitioner also relies upon the declarations of lay witnesses that allegedly "confirm expert

6    findings about [Petitioner's] functioning at the time of trial."  Pet'r's Br. at 15.  For instance,

7    Gerald Reeder, a juror on Petitioner's trial, prepared a declaration in 2002 stating that Petitioner

8    "looked numbed and emotionless" when receiving the jury's sentence of death.  AG022801.

9    Reeder also thought that while on the witness stand, Petitioner rambled and embellished stories,

10   and spoke very fast.  AG022799.  Another juror, Anita Clifton, prepared a declaration in 2002

11   stating that Petitioner looked and behaved in a "strange way" and that Petitioner's testimony

12   showed that Petitioner "was mentally unsound."  AG022535.  Effie Jones, who has known

13   Petitioner since Petitioner was born, thought "there was something wrong with [Petitioner]" at

14   trial and was upset by Petitioner's preoccupation with fixing his hair during trial.  AG022580.

15             Although these comments reflect that lay witnesses thought Petitioner's behavior was odd,

16   none of these comments demonstrate that Petitioner lacked "sufficient ability to consult with his

17   lawyer with a reasonable degree of rational understanding," or lacked a "rational and factual

18   understanding of the proceedings against him."  *Williams*, 384 F.3d at 608 (citing *Dusky*, 362 U.S.

19   at 402).  Further, the trial court, which also observed Petitioner during trial, did not find that

20   Petitioner's behaviors raised sufficient doubt about Petitioner's competency to hold a second

21   competency hearing.  *See Davis*, 384 F.3d at 645 (recognizing that the trial judge was in a key

22   position to gauge whether a competency hearing was needed, and holding that the trial judge did

23   not err in declining to hold a competency hearing either prior to or during the penalty phase of the

24   trial).  Accordingly, it would not have been unreasonable for the California Supreme Court to have

25   given the fact that lay witnesses felt Petitioner's behavior was odd little weight in determining

26   whether there was "persuasive evidence" of incompetence.  *Williams*, 384 F.3d at 608.

27             **d.   Petitioner's Medication Regime During Trial**

28
     Case No. 11-CV-02458-LHK
     ORDER DENYING CLAIM 4

1    Finally, Petitioner contends that "his medically inappropriate medication regimen . . .

2    during trial negatively affected his ability to attend to the proceedings and assist in his defense."

3    Pet'r's Opp. at 15 (citing Claim 1).  As Petitioner recognizes, this argument reiterates the

4    allegations made in Claim 1.  *See id.*  The Court denied Claim 1 on September 15, 2016 because

5    "there is no evidence . . . that Petitioner was ever administered antipsychotic medications" and

6    Petitioner "cannot establish that he was involuntarily medicated."  ECF No. 74.  For the reasons

7    stated in the Court's previous order denying Claim 1, Petitioner's allegation that he was

8    inappropriately medicated lacks merit.

9    **3.  Totality of the Evidence**

10   Although there is evidence in the record that could support a finding of incompetence,

11   retroactive findings of incompetence are "disfavored."  *Williams*, 384 F.3d at 610.  Given the

12   contemporaneous evidence of competence, the limited weight that the California Supreme Court

13   could reasonably have placed on the post-conviction declarations submitted by Petitioner, and in

14   light of the deference due under AEDPA, it was not unreasonable for the California Supreme

15   Court to conclude that there is not "persuasive evidence" that Petitioner was incompetent at trial.

16   *See id.*  Accordingly, the Court finds that the California Supreme Court's decision to reject

17   Petitioner's claim of actual incompetence was neither contrary to, nor the result of an

18   unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  The

19   Court also finds that the California Supreme Court's ruling was not based upon an unreasonable

20   determination of the facts in light of the evidence before it.  *See id.* § 2254(d)(2).  Accordingly, the

21   Court DENIES Claim 4.

22   **IV.    CONCLUSION**

23   For the foregoing reasons, the Court DENIES Claim 4.  Because Petitioner's arguments as

24   to Claim 4 are unavailing, Petitioner's request for an evidentiary hearing as to Claim 4 is also

25   DENIED.  *See Sully*, 725 F.3d at 1075 ("[A]n evidentiary hearing is pointless once the district

26   court has determined that § 2254(d) precludes habeas relief.").

27

28

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 4

1    **IT IS SO ORDERED.**

2

3    Dated: September 27, 2016

4                                              _____

5                                              LUCY H. KOH
                                               United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

19

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 4