1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DELANEY GERAL MARKS,

           Petitioner,

    v.

RON DAVIS, Warden, California State
Prison at San Quentin,

          Respondent.

Case No. 11-CV-02458

**ORDER DENYING CLAIM 10**

Re: Dkt. No. 62, 63

In 1994, Petitioner Delaney Geral Marks ("Petitioner") was convicted of two counts of first degree murder with personal use of a firearm, and two counts of attempted premeditated murder and infliction of great bodily injury, and sentenced to death. On December 14, 2011, Petitioner filed a petition for a writ of habeas corpus before this Court. ECF No. 3 ("Pet.").

The Court has ruled on 10 of Petitioner's 22 claims. *See* ECF Nos. 52, 74, 75, 76, 77. This Order addresses Claim 10 of the petition. Petitioner requests an evidentiary hearing as to this claim. For the reasons discussed below, Claim 10 is DENIED, and Petitioner's request for an evidentiary hearing is DENIED.

**I.      BACKGROUND**

**A.**     **Factual Background**[1]

On October 17, 1990, Petitioner entered a Taco Bell restaurant in Oakland, California. After ordering, he shot employee Mui Luong ("Luong") in the head. Luong survived the shooting but remained in a persistent vegetative state. Petitioner then entered the Gourmet Market, not far from the Taco Bell. There, Petitioner shot John Myers ("Myers") and Peter Baeza ("Baeza"). Baeza died at the scene but Myers survived. Later that evening, Petitioner and his girlfriend, Robin Menefee ("Menefee"), took a cab driven by Daniel McDermott ("McDermott"). Petitioner shot and killed McDermott. *Marks*, 31 Cal. 4th at 204–06.

Petitioner was arrested shortly after McDermott was shot. Lansing Lee ("Lee"), a criminalist, testified at trial with "virtual absolute certainty" that the bullets that shot Baeza and Myers came from Petitioner's gun. *Id.* at 207. Lee also testified that his analysis "indicated" that the bullet that shot McDermott came from Petitioner's gun and "suggested" that the bullet that injured Luong also came from the same source. *Id.* At least four eyewitness identified Petitioner as the shooter. *Id.* at 205. Further, although McDermott carried $1 bills in his taxi in order to make change, McDermott had no paper currency on his body or in his taxi after the shooting. Defendant, however, was arrested with seven $1 bills on his person. *Id.* at 206–07. Petitioner was also overheard telling another defendant that "he was in for three murders" and that the victims had died because "I shot them." *Id.* at 208.

At trial, Petitioner testified and denied all of the shootings. *Id.* at 207. The defense also presented evidence that Petitioner's hands did not test positive for gunshot residue. *Id.* at 208.

On April 24, 1994, the jury convicted Petitioner of two counts of first degree murder with personal use of a firearm, and two counts of attempted premeditated murder with personal use of a firearm and infliction of great bodily injury.

During the penalty phase, the prosecutor presented in aggravation evidence of Petitioner's

---

[1] The following facts are taken from the California Supreme Court's opinion on direct appeal. *See People v. Marks*, 31 Cal. 4th 197, 203–14 (2003). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

*United States District Court*
*Northern District of California*

past violent conduct, including incidents of domestic violence and violent conduct while

incarcerated. *Id.* at 208–10. The prosecutor also presented evidence of the effect of the murders

on the families of the victims. *Id.* at 210–11. In mitigation, Petitioner testified as to his history of

seizures. *Id.* at 212. Other witnesses testified that Petitioner had grown up in a strong family

environment, and had not engaged in problematic behavior until he was discharged from the army

and began using drugs. *Id.* at 212–13. Petitioner's daughter testified that Petitioner had never hit

her, and that she saw him regularly when he was not incarcerated. *Id.* at 213. On May 6, 1994,

the jury set the penalty for the capital crimes at death. *Id.* at 203.

### B. Procedural History

On July 24, 2003, the California Supreme Court affirmed the conviction and sentence on

direct appeal. *People v. Marks*, 31 Cal. 4th 197 (2003). The U.S. Supreme Court denied certiorari

on May 3, 2004. *Marks v. California*, 541 U.S. 1033 (2004).

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. On

March 16, 2005, the California Supreme Court ordered Respondents to show cause in the

Alameda County Superior Court why the death sentence should not be vacated and Petitioner re-

sentenced to life without parole on the ground that Petitioner was intellectually disabled within the

meaning of *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that intellectually disabled

individuals may not be executed. AG023690.[2] The California Supreme Court denied the

remaining claims in the petition on the merits without explanation. In addition to the merits

decision, as separate grounds for denial, the California Supreme Court held that four of

Petitioner's claims were procedurally barred.

The Alameda County Superior Court conducted an evidentiary hearing on the issue of

Petitioner's alleged intellectual disability. On June 13, 2006, the Superior Court denied the

petition, and found that Petitioner had failed to prove by a preponderance of the evidence that he is

intellectually disabled within the meaning of *Atkins*. AG023700–22. On August 14, 2006,

---

[2] Citations to "AG" refer to the Bates-stamped page numbers identified in the California Attorney
General's lodging of the state court record with this Court.

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

United States District Court
Northern District of California

Petitioner filed a further petition for writ of habeas corpus on the issue of his intellectual disability. The petition was denied by the California Supreme Court on December 15, 2010.  AG028382.

On December 14, 2011, Petitioner filed his federal petition for writ of habeas corpus in this Court.  ECF No. 3.  Respondent filed a motion for summary judgment on Claims 2, 3, and 5 on March 26, 2013.  ECF No. 37.  Petitioner cross-moved for summary judgment on Claims 2, 3, and 5 on March 28, 2013.  ECF No. 38.  Both Petitioner and Respondent filed opposition briefs on June 10, 2013.  ECF Nos. 44, 45.  On August 8, 2013, Petitioner and Respondent filed reply briefs.  ECF Nos. 48, 49.  The claims were denied, and summary judgment in favor of Respondent granted on June 25, 2015.  ECF No. 52.

On December 15, 2015, Petitioner and Respondent filed opening briefs on the merits as to Claims 1, 4, 6, 7, 8, 9, 10, and 11.  ECF No. 62 ("Resp't's Br."); 63 ("Pet'r Br.").  Petitioner filed a response on February 11, 2016.  ECF No. 63 ("Pet'r Opp.").  Respondent filed a response on February 12, 2016.  ECF No. 65 ("Respt't's Opp.").  The Court denied Claims 1, 6, and 7 on September 15, 2016.  ECF No. 74.  The Court denied Claims 9 and 11 on September 20, 2016.  ECF No. 75.  The Court denied Claims 4 and 8 on September 27, 2016.  ECF Nos. 76, 77.

## II.   LEGAL STANDARD

### A.  Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))

Because Petitioner filed his original federal habeas petition in 2011, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief on a claim adjudicated on the merits in state court only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

### 1.  Contrary To or Unreasonable Application of Clearly Established Federal Law

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

United States District Court
Northern District of California

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs have separate and distinct meanings. *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court."). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 412–13.

A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law. *Williams*, 529 U.S. at 412. Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curium), "[c]ircuit precedent cannot refine or sharpen a general principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S. Ct. 1, 4, (2014) (per curium) (internal quotation marks omitted).

### 2. Unreasonable Determination of the Facts

In order to find that a state court's decision was based on "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir.

5

2014) (internal quotation marks omitted).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  In the event that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*.  *Hurles*, 752 F.3d at 778.  If error is found, habeas relief is warranted if that error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

**B.      Federal Evidentiary Hearing (28 U.S.C. § 2254(e))**

Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits."  563 U.S. at 180–81.  The Ninth Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court.  *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court may ever chose to hold an evidentiary hearing *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once

6

United States District Court
Northern District of California

1   the district court has determined that § 2254(d) precludes habeas relief.”) (internal quotation marks

2   and citation omitted).

3   **III.    DISCUSSION**

4        Claim 10 relates to the trial testimony of Menefee, Petitioner's girlfriend at the time of the

5   crimes.  Petitioner contends that his trial was fundamentally unfair because (1) the prosecutor

6   failed to disclose material evidence relating to Menefee that would have impeached her credibility

7   at trial; (2) the prosecutor knowingly elicited false testimony from Menefee at trial; and (3) the

8   prosecutor presented evidence that unfairly buttressed the credibility of her testimony at trial.

9        Petitioner presented this claim in his state habeas petition, and the California Supreme

10  Court denied relief on the merits without explanation.  AG023690 (“All other claims set forth in

11  the petition for writ of habeas corpus are denied.  Each claim is denied on the merits.”).  Because

12  the California Supreme Court did not provide reasons for its denial of Petitioner's claim, this

13  Court must determine what arguments or theories could have supported the California Supreme

14  Court's decision.  *See Richter*, 562 U.S. at 102 (“Under § 2254(d), a habeas court must determine

15  what arguments or theories supported or, as here, could have supported, the state court's

16  decision.”).  The Court then “must ask whether it is possible fairminded jurists could disagree that

17  those arguments or theories are inconsistent with the holding in a prior decision” of the U.S.

18  Supreme Court.  *Id.*

19       The Court addresses Petitioner's subclaims under Claim 10 in turn.

20  **A.    Failure to Disclose Material Evidence**

21       Petitioner first contends that the prosecution failed to disclose several material facts about

22  Menefee that would have impeached Menefee's credibility at trial, including that Menefee

23  suffered from developmental and mental disabilities that prevented her from distinguishing

24  between fantasy and reality, Pet. at 205; that Menefee was known to be “an untruthful, unreliable

25  and untrustworthy informant,” *id.* at 206; and that Menefee had a “20-year working relationship

26  with Alameda County law enforcement agencies” in which Menefee “was permitted to commit”

27  offenses “without fear of prosecution.” *id*. at 207–08.

28

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, the prosecution has a duty

2   to disclose evidence favorable to an accused, and the failure to disclose such evidence violates due

3   process "where the evidence is material either to guilt or to punishment, irrespective of the good

4   faith or bad faith of the prosecution." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting

5   *Brady*, 373 U.S. at 87). The prosecution's duty under *Brady* encompasses both impeachment

6   evidence and exculpatory evidence. *Id.* Evidence is material "if there is a reasonable probability

7   that, had the evidence been disclosed to the defense, the result of the proceeding would have been

8   different." *Id.* Thus, a *Brady* violation requires showing three components: (1) "The evidence at

9   issue must be favorable to the accused, either because it is exculpatory, or because it is

10  impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or

11  inadvertently," and (3) "prejudice must have ensued." *Id.* at 281–82.

12  As discussed above, the California Supreme Court denied Claim 10 without explanation.

13  Because the California Supreme Court did not provide reasons for its denial of Petitioner's claim,

14  the Court must determine what arguments or theories could have supported the California

15  Supreme Court's decision to reject Petitioner's *Brady* claim. *See Richter*, 562 U.S. at 102 ("Under

16  § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could

17  have supported, the state court's decision . . . .").

**1. Menefee's Developmental and Mental Disabilities**

19  Petitioner asserts that "[t]he prosecution reasonably and actually knew that Menefee

20  suffered from pervasive developmental and mental disabilities that disabled her from

21  distinguishing between fantasy and reality, and which left her extremely suggestible to

22  confabulation and the development of fictive memory under the force of suggestive questioning or

23  instruction by authority figures." Pet. at 205. As discussed below, the California Supreme Court

24  was reasonable in rejecting Petitioner's argument.

25  Significantly, Petitioner points to no factual basis in the record in support for his assertion

26  that Menefee actually suffered from disabilities that "disabled [Menefee] from distinguishing

27  between fantasy and reality" or rendered her susceptible to "the development of fictive memory

28

8

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

under the force of suggestive questioning," let alone that the prosecution knew that Menefee suffered from such impairments and suppressed this evidence from the defense. *See id.* Indeed, although it is true that Menefee had a history of head trauma, the defense cross-examined Menefee regarding these head injuries at the preliminary hearing in Petitioner's case, and Menefee denied having brain damage or memory loss. *See* AG000348–49. Specifically, in response to the defense's question about a scar on her head, Menefee testified that her "head went through a windshield" in 1973. AG000347–48. Menefee also testified that she "got kicked in the head by a mule when [she] was five years old" and thus had "a plate in [her] head." AG00348. Menefee stated that she suffered from no further head traumas. AG000349. She further testified that she did not have trouble remembering things and that she did not have any brain damage. *Id.* Petitioner points to no evidence that contradicts Menefee's testimony that her head traumas did not cause brain damage or memory loss. *See* Pet. at 205; *see* Pet'r Br. at 57–60.

Indeed, the only evidence in the record that could lend possible support to Petitioner's assertions regarding Menefee's disabilities are notations from Menefee's probation officer, Carmen Fong ("Fong"), in 1976. *See* AG020356–57. Specifically, in November 1976, Fong wrote that Menefee "has continually lied to the probation officer about following through on specific directives" and that Menefee "tells exaggerated stories to make excuses for her failure to follow directives." AG020356. Fong stated that "[e]fforts were made for [Menefee] to participate in psychotherapy and/or group therapy because of her active fantasy life and inability to cope with adult responsibilities," but that Menefee refused to participate in such efforts "because she [was] afraid of being labeled 'crazy.'" AG020357. Fong also stated in November 1976 that Menefee "has been completely uncooperative and unresponsive to probation supervision" and that Menefee "admitted that she lied" to court "regarding a child" in order "to get out of jail." AG020344.

However, Fong's personal opinion in 1976 regarding Menefee's failure to follow probation directives does not establish that Menefee actually "suffered from pervasive developmental and mental disabilities that disabled her from distinguishing between fantasy and reality." Pet. at 205.

9

United States District Court
Northern District of California

1    Indeed, these notations do not speak to Menefee's "developmental and mental disabilities" at all.

2    *See* AG020357; AG020344.  Fong's statements also lend no support to Petitioner's assertion that

3    Menefee was susceptible to developing "fictive memory under the force of suggestive

4    questioning."  *Id*.  Rather, they demonstrate that Menefee continually failed to follow probation

5    instructions, and that Menefee *knowingly* lied and admitted this lie to Fong.  *See* AG020344.

6         Thus, Petitioner's claim that Menefee suffered from "developmental and mental

7    disabilities that disabled her from distinguishing between fantasy and reality," and that the

8    prosecutor knew this fact and suppressed it from the defense, is not supported by the record that

9    was before the California Supreme Court.  Petitioner offers only speculation that Menefee suffered

10   from such disabilities.  *See* Pet. at 205.  "However, to state a *Brady* claim, [Petitioner] is required

11   to do more than 'merely speculate'" about the existence of evidence.  *Runningeagle v. Ryan*, 686

12   F.3d 758, 769 (9th Cir. 2012); *see also Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (reversing the

13   Ninth Circuit's grant of habeas for a *Brady* violation because the Ninth Circuit "grant[ed] habeas

14   relief on the basis of little more than speculation with slight support," upsetting "the proper

15   delicate balance between the federal courts and the States").  Thus, it was also not objectively

16   unreasonable for the California Supreme Court to deny this claim, or Petitioner's request for an

17   evidentiary hearing to develop further facts regarding Menefee's alleged disabilities.  *See Woods*

18   *v. Sinclair*, 764 F.3d 1109, 1128 (9th Cir. 2014) (finding that the state court was reasonable in

19   refusing to hold an evidentiary hearing and rejecting a petitioner's *Brady* claim where the

20   petitioner "could offer [only] speculation that an evidentiary hearing might produce testimony or

21   other evidence").

22         Moreover, even assuming that Fong's notations regarding Menefee's parole violations and

23   "active fantasy life" were material as impeachment evidence against Menefee, and assuming that

24   the prosecution withheld these notations from the defense, Petitioner's argument still fails.  The

25   California Supreme Court could have reasonably found that Petitioner was not prejudiced by the

26   prosecution's failure to disclose Menefee's probation documents from the 1970s to the defense,

27   and thus that Petitioner had failed to establish prejudice, the third prong of a *Brady* violation.  *See*

28
10

*Strickler*, 527 U.S. at 281–82. Specifically, in order to establish prejudice, Petitioner must show "that there is a reasonable probability that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Id.* (internal quotation marks omitted). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434.

Here, the jury was presented at trial with evidence of Menefee's criminal history, her drug use, and her head traumas. The prosecution asked Menefee at trial about her criminal history on direct examination, and Menefee admitted to a 1974 conviction for second-degree burglary, a 1986 conviction for "a misdemeanor of forgery," and a 1988 conviction for the felony "sale of narcotics, cocaine." AG015711. Menefee also testified during trial about using crack cocaine. *See, e.g.*, AG015710 (testifying that Petitioner bought crack cocaine and shared it with Menefee). Moreover, Menefee testified at trial about both of her head injuries. AG015711 (testifying about her car accident in 1973 and being kicked by a mule at the age of five). Given that the jury knew these impeaching facts about Menefee during trial, the California Supreme Court could have reasonably found that there was no "reasonable probability" that Fong's remarks in 1976 would have resulted in a different outcome at trial, and thus that *Brady* was not violated. *Strickler*, 527 U.S. at 281–82.

Furthermore, even on the assumption that Fong's notations would have meaningfully affected the jury's perception of Menefee as a witness, the California Supreme Court could still have reasonably concluded under *Brady* that Petitioner was not prejudiced by the failure to disclose this evidence. Although Menefee was present with Petitioner during the time of the shootings and testified as to his actions between the shootings and afterwards, *see* AG015693–AG015712, other substantial physical and testimonial evidence apart from Menefee's testimony connected Petitioner to the shootings. A criminalist testified with "virtually absolute certainty" that the bullets that shot Baeza and Myers came from Petitioner's gun. *Marks*, 31 Cal. 4th at 207. In addition, ballistics analysis "indicated" that the bullet that shot McDermott came from

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

1  Petitioner's gun and "suggested" that the bullet that injured Luong came from the same source.  *Id.*

2  At least four eyewitnesses testified as to the shootings and identified Petitioner as the shooter.  *Id.*

3  at 205–06.  Although McDermott carried $1 bills in his taxi in order to make change, after the

4  shooting, no paper currency was found in McDermott's taxicab or on McDermott's body, but

5  Petitioner was arrested after the shooting with several $1 bills on his person.  *Id.* at 206.

6  Additionally, Petitioner was overheard telling another defendant that "he was in for three murders"

7  and that the victims had died because "I shot them."  *Id.* at 208.

8         In sum, in the face of such evidence of guilt—and in light of the limited probative value of

9  the additional impeachment evidence against Menefee—it was not objectively unreasonable for

10  the California Supreme Court to conclude that there is not "a reasonable probability that, had the

11  evidence been disclosed to the defense, the result of the proceeding would have been different."

12  *Strickler*, 527 U.S. at 280.  Thus, Petitioner is not entitled to habeas relief on the basis of this

13  argument.

14  ### 2. Leniency In Return for Favorable Testimony

15         Second, Petitioner asserts that the prosecution "reasonably and actually knew that in

16  exchange for her testimony against Mr. Marks, Menefee received lenient disposition in pending

17  criminal investigations and prosecutions," and that the prosecution failed to disclose this to the

18  defense.  Pet. at 205.  More specifically, Petitioner asserts that, in exchange for her testimony

19  against Petitioner, Menefee faced no consequences for her involvement in the instant capital

20  crimes, and that she avoided probation revocations and obtained lenient dispositions for her

21  involvement in other offenses.  *Id.* at 205–06.  The Court addresses each of these charges below in

22  turn.

23  ### a. Lenient Treatment for Menefee's Involvement in Petitioner's Capital Offenses

24         First, Petitioner states that the prosecutor knew that in exchange for her testimony against

25  Petitioner, Menefee "[a]void[ed] any criminal liability on the basis of her alleged involvement in

26  the capital murder and robbery offenses charged against Petitioner," and that she "[a]voided a

27  revocation of her felony probation and imposition of a state prison sentence on the basis of her

28

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

1    criminal culpability regarding said capital charges."  Pet. at 205.

2         The record shows that, during trial, the prosecution, defense, and the trial court discussed

3    whether a jury instruction was needed regarding Menefee's role in the events.  AG016288–89.

4    The prosecutor remarked that "I believe under the law or under the facts as its examined here

5    [Menefee] is not an accomplice, but merely one person who is present."  AG016288.  The

6    prosecutor further stated that "[a]ll of us [defense counsel, the trial court, and the prosecutor] take

7    the position that she's not [an accomplice]."  AG016291.  The trial court also noted that it "would

8    agree from what I have seen and heard in this courtroom, Ms. Menefee is not an accomplice even

9    under the prosecution theory of the case."  AG016289.

10        Petitioner does not cite any evidence that Menefee avoided charges for her involvement in

11   the events at issue in exchange for her testimony.  *See* Pet at 205–06.  Indeed, Petitioner offers

12   only speculation that Menefee was provided lenient treatment in exchange for her testimony

13   against Marks.  *See id.*  "However, to state a *Brady* claim, [Petitioner] is required to do more than

14   'merely speculate'" about the prosecutor's lenient treatment of Menefee.  *Runningeagle*, 686 F.3d

15   758, 769 (9th Cir. 2012).  Under these circumstances, it was not objectively unreasonable for the

16   California Supreme Court to deny Petitioner's *Brady* claim and deny Petitioner's request for an

17   evidentiary hearing. *See Woods*, 764 F.3d at 1128 (finding that the state court was reasonable in

18   refusing to hold an evidentiary hearing and rejecting a petitioner's *Brady* claim where the

19   petitioner "could offer [only] speculation that an evidentiary hearing might produce testimony or

20   other evidence"); *Robinson v. Hill*, 2012 WL 1622655, at *5 (N.D. Cal. May 9, 2012) (finding no

21   *Brady* violation because the petitioner's allegations that the prosecution destroyed "material

22   evidence" were "conclusory" and lacked "factual basis").  Petitioner is accordingly not entitled to

23   habeas relief on the basis of this argument.

24        **b. Lenient Treatment for Menefee's 1988 Sale of Cocaine Offense**

25        Second, Petitioner contends that, in exchange for her testimony against Petitioner, Menefee

26   received lenient treatment regarding her charge for selling cocaine in 1988.  Pet. at 205–06.

27   Specifically, Menefee was arrested on August 10, 1988 for selling cocaine to an undercover police

28                                    13

officer, and Menefee was placed on three-year probation.  AG020372, AG020376.  Petitioner

contends that Menefee violated her probation, that Menefee received lenient treatment regarding

this probation violation due to her testimony against Petitioner, and that the prosecutor knew this.

Pet. at 206.  As discussed below, however, the record does not support Petitioner's argument.

According to the exhibits that Petitioner attached to his state habeas petition, Menefee was

placed on probation for three years for her 1988 sale-of-cocaine offense.  AG020376.  In

September 1989, Menefee violated the terms of her probation by testing positive for cocaine,

failing to report for scheduled probation appointments, and failing to pay the restitution fund, fine,

and lab fee.  AG020376.  Accordingly, Menefee's probation was revoked and Menefee served

ninety days in jail; Menefee was released from custody on April 1, 1990.  *Id.*; AG020380.

Beginning in May 1990, Menefee missed scheduled probation appointments.  AG020379.

On October 10, 1990, Menefee's probation officer recommended that Menefee's probation be

revoked on the bases of Menefee's failure to appear at her scheduled probation appointments and

Menefee's failure to pay the restitution fund and lab fee.  *Id.*  The California Superior Court

ordered on July 16, 1991 that Menefee serve 45 days in county jail, with credit for time served, for

violating the terms of her probation.  AG020382.  Accordingly, Menefee served 30 days in jail and

she was released in August 1991.  AG00384.

The instant capital offenses occurred on October 17, 1990.  *Marks*, 31 Cal. 4th at 204.  A

preliminary hearing in Petitioner's instant capital case was held on October 21, 1991.  AG000304.

Menefee testified during the preliminary hearing about her criminal history and about her history

of probation violations.  *Id.*  Following her testimony, Menefee left the courtroom and the parties

discussed the status of Menefee's probation with the trial court.  AG00385.  During this colloquy

with the trial court, the prosecutor expressly remarked to the trial court that it "had no discussions

with [Menefee] about her case and made no promises and attempted in no way to intervene in her

sentence."[3]  AG000387.  Following this exchange, Menefee returned to the witness stand and

_____

[3] The prosecutor did not specify as to which "sentence" of Menefee's he was referring.
AG000387.  From the context of Menefee's testimony and the colloquy between the court and the

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

United States District Court
Northern District of California

1  testified that she had not "been made any promises" by the prosecution—or by any member of the

2  police department—in relation to her testimony against Petitioner.  AG000388.

3       Thus, the record shows that the defense was made aware of Menefee's 1988 sale-of-

4  cocaine charge, that Menefee was placed on three-year probation for this offense, that Menefee

5  violated her probation in 1989 and 1990, and that Menefee served time in jail in 1990 and 1991 for

6  violating the terms of her probation.  *See, e.g.*, AG00384.  Menefee and the prosecutor both stated

7  that the prosecution did not communicate with Menefee regarding her 1988 sale-of-cocaine

8  offense or her probation revocations, and that the prosecution "made no promises and attempted in

9  no way to intervene in [Menefee's] sentence."  AG000387–88.  Petitioner offers only speculation

10  that, in exchange for her testimony, Menefee was offered lenient treatment.  *See* Pet. at 206.

11  Under these circumstances, the California Supreme Court was not objectively unreasonable in

12  denying Petitioner's claim, nor was it objectively unreasonable in denying Petitioner an

13  evidentiary hearing based on this claim.  *See Woods*, 764 F.3d at 1128 (finding that the state court

14  was reasonable in refusing to hold an evidentiary hearing and rejecting a petitioner's *Brady* claim

15  where the petitioner "could offer [only] speculation that an evidentiary hearing might produce

16  testimony or other evidence"); *Robinson*, 2012 WL 1622655, at *5 (finding no *Brady* violation

17  because the petitioner's allegations that the prosecution destroyed "material evidence" were

18  "conclusory" and lacked "factual basis").

19       Furthermore, to the extent that Petitioner argues that the prosecution violated *Brady* by

20  only disclosing the disposition of Menefee's case to the defense at the preliminary hearing, rather

21  than earlier, this is not persuasive.  *See* Pet'r Opp. at 49.  The Ninth Circuit has held that evidence

22  disclosed to the defense even as late as trial does not violate *Brady* so long as the disclosure was

23  "made at a time when disclosure would be of value to the accused."  *United States v. Gordon*, 844

24  F.3d 1397, 1403 (9th Cir. 1988) (quoting *United States v. Davenport*, 753 F.2d 1460, 1462 (9th

25  Cir. 1985)).  Accordingly, even on the assumption that the defense learned of the disposition of

26

27  parties, however, the Court infers that the prosecutor is referring to Menefee's sentence relating to
her 1990 probation violations.

28  
Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

Menefee's 1988 case during Menefee's preliminary hearing on October 21, 1991, and assuming that this evidence was material to Petitioner's case, the defense nonetheless "had substantial opportunity to use the [evidence] and to cure any prejudice caused by the delayed disclosure." *Id.* Indeed, after the prosecution discussed the disposition of Menefee's case, the defense continued to cross examine Menefee at the preliminary hearing. AG00386.  Moreover, Menefee did not testify at Petitioner's trial until April 4, 1994, nearly three years later.  AG015652, AG015681.  Under these circumstances, "there was no due process violation under *Brady*." *Gordon*, 844 F.3d at 1403 (finding that *Brady* was not violated where evidence was disclosed at trial because the defense could have recalled witnesses or introduced documents as exhibits); *United States v. Guzman*, 89 F. App'x 47, 49 (9th Cir. 2004) (finding that the prosecution's disclosure of material evidence twenty-two days prior to trial was not a *Brady* violation because the disclosure was still "of value to the accused").

In sum, Menefee testified regarding the disposition of her 1988 case at the preliminary hearing in the instant capital case approximately three years before trial, and the documents in the record before the California Supreme Court do not contradict this testimony.  In the face of this evidence, Petitioner offers only speculation that Menefee received lenient treatment in exchange for her testimony.  Thus, the California Supreme Court was not objectively unreasonable in denying Petitioner's argument.  *See Runningeagle*, 686 F.3d at 767 ("[Petitioner] cannot make out a *Brady* claim because he can only speculate as to what [the witness] . . . told prosecutors.").

Finally, even assuming that the prosecution suppressed material evidence relating to Menefee's cooperation with any of the charges discussed above, the California Supreme Court could have reasonably determined that Petitioner was not prejudiced by the suppression, and thus that the third prong of *Brady* was not satisfied.  *Strickler*, 527 U.S. at 281–82.  Again, as discussed above, Menefee was present with Petitioner during the time of the shootings, and Menefee testified about Petitioner's actions around the time of the shootings and afterwards.  AG015696– 700.  However, other substantial physical and testimonial evidence connected Petitioner to the shootings apart from Menefee's testimony, such as ballistic evidence, *Marks*, 31 Cal. 4th at 207;

16

United States District Court
Northern District of California

testimony from at least four eyewitnesses that identified petitioner as the shooter, *id.* at 205–06; circumstantial evidence that Petitioner may have had McDermott's money at the time of his arrest, *id.* at 207; and testimony that Petitioner was overheard telling another defendant that "he was in for three murders" and that the victims had died because "I shot them," *id.* at 208. Accordingly, in light of the substantial evidence in the record connecting Petitioner with the shootings, the California Supreme Court could have reasonably determined that Petitioner was not prejudiced by the prosecution's suppression of the evidence discussed above, and thus that Petitioner had failed to establish the third prong of *Brady. Strickler*, 527 U.S. at 281–82.

### c. Lenient Treatment for Menefee's 1992 Sale of Cocaine Offense

Third, Petitioner contends that Menefee's charge for selling crack cocaine in 1992 was dismissed, along with her co-defendant's charge, in exchange for Menefee's testimony in Petitioner's case. *See* Pet. at 206–07.

This argument relates to Menefee's arrest on July 8, 1992, for selling crack cocaine to an undercover police officer. AG020390. Menefee allegedly directed an undercover officer to her friend, Thomas Jackson, who sold the undercover officer crack cocaine. *Id.* According to the records that Petitioner submitted to the California Supreme Court as exhibits to his state habeas petition, Menefee's case was ultimately dismissed on August 14, 1992. AG020385. A notation in the police records states that "Menefee is [the] sole witness in the Delaney Marks death penalty case. No need to question her credibility, told to dismiss." AG020386. Further, these records show that Menefee told law enforcement that Jackson was not the person who sold the cocaine to the officer, "and [Menefee] stated that she w[ould] testify to" that fact. AG020389.

Petitioner asserts that these documents demonstrate that the prosecution reasonably knew that, in exchange for her testimony against Petitioner, Menefee received a lenient disposition with regards to the dismissal of this felony case. Pet. at 205–06. Further, Petitioner contends that the prosecution also dismissed Jackson's case so as to not "expose Menefee to cross-examination in Jackson's case." Pet'r Opp. at 50.

The record shows, however, that the defense was aware that Menefee's 1992 charge was

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

United States District Court
Northern District of California

1   dismissed and that the reason behind the dismissal was the prosecution's concern over Menefee's

2   safety, not Menefee's testimony against Petitioner.  Specifically, after the prosecution called

3   Menefee as a witness and as the prosecution was prepared to rest its case-in-chief, the prosecutor

4   remarked to the trial court that he had pulled Menefee's 1992 case file again "to make sure that it

5   reflected all of her prior felony convictions."  AG015800.  The prosecutor stated that, in doing so,

6   he "found out for the first time" the "circumstances under which" Menefee's 1992 sale-of-cocaine

7   case had been dismissed.  *Id.*  The prosecutor explained on the record to the court that the "case

8   was dismissed on August 14, 1992 . . . at the behest" of the prosecutor that was previously

9   handling Petitioner's case, Joe Anderson ("Anderson").  AG015801.  The prosecutor told the

10   court that Anderson dismissed the case because Anderson was concerned for Menefee's safety if

11   she were placed in custody.  *Id.*  Specifically, Anderson was concerned because "people have a

12   way of getting hurt when they're in custody and it's known that they're going to be testifying

13   against other persons in custody, especially if it's a murder case or a death penalty case."  *Id.*

14       The prosecutor told the trial court in the instant capital case that he had discussed all of

15   these facts with Petitioner's counsel prior to telling the court.  AG015800.  The prosecutor further

16   stated that "[t]here had been no communication between [Anderson] and Ms. Menefee concerning

17   that dismissal."  AG015802.  The prosecutor also told the court that "Ms. Menefee had in no way

18   made any contact with any member of [the prosecutor's] office to gain any type of special

19   treatment in light of the possibility of her testifying in this case."  *Id.*  The prosecutor said that he

20   was prepared to call Anderson to testify about these facts, if needed.  AG015801.  The trial court

21   provided the defense with an opportunity to state anything else on the record, but the defense

22   declined.  AG015802.

23       Accordingly, the record demonstrates that Anderson recommended the dismissal of

24   Menefee's 1992 case out of concern over Menefee's safety as an informant in custody, the

25   prosecutor in Petitioner's case stated on the record to the trial court in the instant case that no

26   individual in the prosecutor's office communicated with Menefee about the dismissal of the 1992

27   case, and the prosecutor also told the defense about both of these facts.  AG015800–02.  Petitioner

28   

18

United States District Court
Northern District of California

offers only conclusory speculation that prosecutors dismissed the 1992 charge against Menefee in exchange for her testimony against Petitioner. *See* Pet. at 209–11. "However," as discussed above, "to state a *Brady* claim, [Petitioner] is required to do more than 'merely speculate'" that the prosecutors dismissed the 1992 case against Menefee and Jackson in exchange for Menefee's cooperation. *See Runningeagle*, 686 F.3d at 769.

Moreover, to the extent that Petitioner argues that the prosecution disclosed the facts about the disposition of Menefee's 1992 charge in an untimely fashion, as stated above, the Ninth Circuit has found that the prosecution's disclosure at trial of material evidence does not violate *Brady* so long as the defense had a "substantial opportunity" to use the material evidence. *Gordon*, 844 F.2d at 1403. Here, Petitioner learned of this information soon after Menefee testified and prior to its case-in-chief; Petitioner's counsel could have requested to recall Menefee as a witness or Petitioner's counsel could have stated something on the record when given the opportunity to do so by the trial court. *See* AG015802. Under these circumstances, the California Supreme Court could have reasonably concluded that Petitioner had a "substantial opportunity to use the [information] and to cure any prejudice caused by the delayed disclosure," and thus that *Brady* was not violated. *See id.* (finding that a defendant had a "substantial opportunity" to use material evidence disclosed during trial and after the witness testified because the witnesses could have been recalled at trial for reexamination about the material evidence).

In sum, given the record before the California Supreme Court, it was not objectively unreasonable for the California Supreme Court to deny Petitioner's argument that Menefee received lenient treatment with regards to her 1992 sale-of-cocaine offense in exchange for testifying against Petitioner, and it was not unreasonable for the California Supreme Court to deny Petitioner's request for an evidentiary hearing related to this argument. *See Woods*, 764 F.3d at 1128 (finding that the state court was reasonable in refusing to hold an evidentiary hearing and rejecting a petitioner's *Brady* claim where the petitioner "could offer [only] speculation that an evidentiary hearing might produce testimony or other evidence"); *Robinson*, 2012 WL 1622655, at *5 (finding no *Brady* violation because the petitioner's allegations that the prosecution destroyed

1   "material evidence" were "conclusory" and lacked "factual basis").

2          Finally, even assuming that the prosecution suppressed material evidence relating to

3   Menefee's cooperation with any of the charges discussed above, the California Supreme Court

4   could have reasonably determined that Petitioner was not prejudiced by the suppression, and thus

5   that the third prong of *Brady* was not satisfied.  *Strickler*, 527 U.S. at 281–82.  Again, as discussed

6   above, Menefee was present with Petitioner during the time of the shootings, and Menefee

7   testified about Petitioner's actions around the time of the shootings and afterwards.  AG015696–

8   700.  However, other substantial physical and testimonial evidence connected Petitioner to the

9   shootings apart from Menefee's testimony, such as ballistic evidence, *Marks*, 31 Cal. 4th at 207;

10  testimony from at least four eyewitnesses that identified petitioner as the shooter, *id.* at 205–06;

11  circumstantial evidence that Petitioner may have had McDermott's money at the time of

12  Petitioner's arrest, *id.* at 207; and testimony that Petitioner was overheard telling another

13  defendant that "he was in for three murders" and that the victims had died because "I shot them,"

14  *id.* at 208.  Accordingly, in light of the substantial evidence in the record connecting Petitioner

15  with the shootings, the California Supreme Court could have reasonably determined that Petitioner

16  was not prejudiced by the prosecution's suppression of the evidence discussed above, and thus that

17  Petitioner had failed to establish the third prong of *Brady*.  *Strickler*, 527 U.S. at 281–82.

### 3. Being an Untruthful Informant

18  

19          Lastly, Petitioner states that the prosecution violated *Brady* because the "prosecution

20  reasonably and actually knew that Menefee was widely and justifiably regarded by Alameda

21  County law enforcement community" as being "an untruthful, unreliable and untrustworthy

22  informant."  Pet. at 207.  Moreover, Petitioner contends that the prosecution knew that Menefee

23  had a 20-year "working relationship with the law enforcement agencies in Alameda County" and

24  that she was "allowed and encouraged to engage in a pattern of criminal conduct . . . without fear

25  of prosecution."  *Id.* at 207–08.  As discussed below, however, Petitioner's assertions are not

26  supported by the record.

27  

28  Case No. 11-CV-02458-LHK
    ORDER DENYING CLAIM 10

United States District Court
Northern District of California

1

2          First, in support of this claim, Petitioner cites to the probation officer notations that

3   Petitioner submitted as exhibits to his habeas petition before the California Supreme Court.  Pet. at

4   207.  As discussed above, these notations included remarks from Fong in 1976 that Menefee was

5   continually unable to comply with probation directives, that Menefee "ha[d] continually lied to the

6   probation officer about following through on specific directives," that Menefee "tells exaggerated

7   stories to make excuses for her failure to follow directives," and that Menefee "enjoys the

8   attention and confusion she creates by playing these games" with the probation office.

9   AG020356–57.

10          However, these notations do not demonstrate that Menefee was an "informant" for law

11  enforcement, or that Menefee had a "working relationship" with law enforcement that allowed her

12  to evade criminal responsibility.  *See* Pet. at 207–08.  Indeed, the exhibits that Petitioner submitted

13  to the California Supreme Court show that Menefee was repeatedly cited for violating her

14  probation from 1974 to 1976 and that she faced consequences as a result.  *See, e.g.*, AG020332,

15  AG020345 (noting, in 1976, that Menefee failed to follow probation directives and recommending

16  that she serve the remainder of her probation in jail).  Further, these documents demonstrate that,

17  as a result of her probation violations, the court issued a bench warrant for Menefee's arrest in

18  1976 and 1978 and Menefee was sentenced to time in jail.  AG020348 (issuing bench warrant in

19  1976); AG020371 (setting forth Menefee's criminal history, including that her probation was

20  revoked in 1978 and a bench warrant issued).  Thus, these exhibits do not demonstrate that

21  Menefee was "allowed and encouraged to engage in a pattern of criminal conduct . . . without fear

22  of prosecution," let alone that Menefee was allowed to do so because of her relationship with law

23  enforcement.  Pet. at 208.

24          Second, in support of this claim, Petitioner cites documents that relate to Menefee's 1992

25

26  charge for sale of cocaine.  *See* Pet. at 208–10.  Specifically, Petitioner states that "[t]he District

27

28

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

United States District Court
Northern District of California

Attorney dismissed Menefee's [1992 sale-of-cocaine] case expressly in consideration for her cooperation as the primary witness" in Petitioner's case, Pet. at 210, and that the prosecutor "expressly and falsely represented to both trial counsel and the trial court" that the prosecutor's office had not had discussions with Menefee, *id.* at 211.  However, as discussed above, the prosecutor in Petitioner's case stated to the court that Menefee's 1992 charges were dismissed because Menefee was a witness in the instant capital case and the prosecution feared for her safety if she were to be placed in custody, and that the prosecutor's office had no discussions with Menefee regarding her cooperation.  AG015802.  Petitioner offers no evidence in support of his assertions to the contrary and instead merely speculates that the prosecutor was lying.  Again, as discussed above, Petitioner's speculation is not enough.  *See Runningeagle*, 686 F.3d at 767 ("[Petitioner] cannot make out a *Brady* claim because he can only speculate as to what [the witness] . . . told prosecutors.").

Finally, in support of this claim, Petitioner asserts that Menefee was known by the prosecution to be "an untruthful, unreliable and untrustworthy informant" because "Menefee had been found by the Alameda County Superior Court to have lied under oath as a witness for the prosecution in an earlier murder trial."  Pet. at 206.  However, Petitioner overstates the record. Petitioner's evidence in support of this claim is a transcript from Menefee's appearance in Superior Court for the County of Alameda on July 9, 1974, to be sentenced for her involvement in a theft offense.  AG020364–66.  In sentencing Menefee, the trial court commented that "[i]nstead of sentencing you to State Prison with execution suspended," the court would "suspend imposition of sentence" and have "felony probation imposed" so that Menefee could have the conviction removed at a later point in time, "which would be rather difficult," the court explained, if it were to "impose[] State Prison suspended."  AG020366.  The court then stated that it was giving this sentence because the court "fe[lt it had] seen [Menefee] before."  *Id.*  Specifically, Menefee had

22

been "a witness in a murder trial" before the court and the court stated that it "didn't believe" Menefee's testimony or another witness's testimony in that case, and that Menefee "got into bad company." *Id.* The court remarked that Menefee was "old enough now to know better" and that the court "trust[ed] that" Menefee would do better. AG020367.

Thus, the evidence cited by Petitioner shows that Menefee testified in a prior case—on an unknown date—and that the court did not "believe" her testimony, AG020366, but this does not establish that Menefee committed perjury, that Menefee was found by the court to have committed perjury, or that Menefee was working with the prosecution or serving as an "informant" in committing perjury. *See* Pet. at 206. Again, Petitioner offers only speculation regarding Menefee's reputation as an untruthful informant and Menefee's "working relationship with law enforcement. *Id.* Petitioner must "do more than 'merely speculate,'" however, in order "to state a *Brady* claim." *Runnineagle*, 686 F.3d at 769–70. Under these circumstances, it was not objectively unreasonable for the California Supreme Court to deny Petitioner's *Brady* claim and deny Petitioner's request for an evidentiary hearing. *See Woods*, 764 F.3d at 1128 (finding that the state court was reasonable in refusing to hold an evidentiary hearing and rejecting a petitioner's *Brady* claim where the petitioner "could offer [only] speculation that an evidentiary hearing might produce testimony or other evidence"); *Robinson*, 2012 WL 1622655, at *5 (finding no *Brady* violation because the petitioner's allegations that the prosecution destroyed "material evidence" were "conclusory" and lacked "factual basis").

Finally, even assuming that this evidence is favorable to Petitioner and demonstrates that Menefee was known by law enforcement to be an "untrustworthy informant," the California Supreme Court could have reasonably concluded that Petitioner was not prejudiced by the lack of disclosure of this evidence, and thus that the third prong of *Brady* was not satisfied. *Strickler*, 527 U.S. at 281–82. As stated above, Menefee was present with Petitioner during the time of the

23

United States District Court
Northern District of California

United States District Court
Northern District of California

shootings, and she testified at trial about his actions around the time of the shootings and

afterwards.  *See* AG015696–700.  However, other substantial physical and testimonial evidence

connected Petitioner to the shootings apart from Menefee's testimony, such as ballistic evidence,

*Marks*, 31 Cal. 4th at 207; testimony from at least four eyewitnesses identifying Petitioner as the

shooter, *id.* at 205–06; circumstantial evidence that Petitioner may have had McDermott's money

at the time of Petitioner's arrest; and testimony that Petitioner was overheard telling another

defendant that "he was in for three murders" and that the victims had died because "I shot them,"

*id.* at 208.  Thus, in light of the substantial evidence in the record connecting Petitioner with the

shootings, the California Supreme Court could have reasonably determined that Petitioner was not

prejudiced by the prosecution's suppression of the evidence discussed above, even assuming that

the evidence was material and that it was suppressed.  *Strickler*, 527 U.S. at 281–82.

Petitioner further contends that the prosecution "successfully concealed" evidence of

Menefee's "prior perjury" at the preliminary hearing in Petitioner's case.  Pet. at 209.  However,

the record shows only that, at the preliminary hearing, defense counsel asked Menefee "Ha[ve]

you ever testified in a courtroom before?"  AG000381.  Menefee responded "Yes."  *Id.*  Defense

counsel then asked, "Were you testifying against somebody else as to what that person had done?"

*Id.*  The prosecutor objected on the basis of "[r]elevance," and the trial court sustained the

prosecutor's objection.  AG000381.

Petitioner offers only conclusory speculation that, by objecting to the defense counsel's

question, the prosecutor was intentionally trying to "thwart[] [defense] counsel's efforts to

discover" the truth about Menefee's "prior perjury."  *See* Pet. at 209.  Such speculation, however,

is not enough to state a *Brady* claim.  *Robinson,* 2012 WL 1622655, at *5 (finding no *Brady*

violation because the petitioner's allegations that the prosecution destroyed "material evidence"

were "conclusory" and lacked "factual basis").  Moreover, as stated, the evidence submitted by

24

Petitioner in support of his assertion regarding Menefee's "prior perjury" does not establish that Menefee committed perjury. *See* AG020364–66. Finally, even assuming that Menefee did commit "prior perjury," and assuming that the prosecution attempted to conceal this evidence through objecting at the preliminary hearing, the California Supreme Court could have nonetheless reasonably concluded that Petitioner was not prejudiced by this lack of disclosure, and thus that the third prong of *Brady* was not satisfied, because of the substantial physical and testimonial evidence connecting Petitioner to the shooting, as discussed above. *Strickler*, 527 U.S. at 281–82.

## B.      Knowing Presentation of False Testimony

Petitioner also contends in Claim 10 that the prosecution "knowingly presented and/or failed to correct Menefee's materially false and misleading trial testimony." Pet. at 212. Specifically, Petitioner contends that the prosecution knowingly elicited and presented false testimony from Menefee regarding the Gourmet Market shooting, Pet. at 212, the Taco Bell shooting, Pet. at 214, and the shooting of the taxi driver, Pet. at 215.

The relevant clearly-established federal law for this subclaim is *Napue v. Illinois*, which held that a defendant's conviction violates the Fourteenth Amendment when the prosecution obtains the conviction "through use of false evidence, known to be such by representatives of the State," or where the "State, although not soliciting false evidence, allows it to go uncorrected when it appears." 360 U.S. 264, 269 (1959). "A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). Thus, a claim under *Napue* and its progeny will succeed when (1) the testimony or evidence was actually false, (2) the prosecution knew or should have known that the testimony or evidence was actually false, and (3) the false testimony or evidence was material. *Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013).

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

As discussed above, the California Supreme Court denied Claim 10 without explanation. Because the California Supreme Court did not provide reasons for its denial of Petitioner's claim, the Court must determine what arguments or theories could have supported the California Supreme Court's decision to reject Petitioner's *Brady* claim.  *See Richter*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision . . . .").

**1. False Testimony Regarding the Gourmet Market Shooting**

First, Petitioner argues that "[p]rosecuting authorities knowingly and purposefully elicited false evidence from Menefee that [Petitioner] told her that he was going to Gourmet Market to rob it and that upon his return told her that he had shot two people."  Pet. at 212.  According to Petitioner, Menefee "denied having any knowledge of the shootings" while in police custody, but "officials threatened, coerced, cajoled, berated, threatened and unfairly forced and convinced Menefee to give a statement that she and the police knew falsely implicated" Petitioner.  *Id.* Petitioner contends that Menefee gave false statements that Petitioner told her that he was going to Gourmet Market in order to rob the store.  *Id.* at 213.

Petitioner's assertions are not supported by the record.  The transcript of Menefee's tape-recorded interview with Detective Landes ("Landes") on October 18, 1990, does not demonstrate that law enforcement, let alone the prosecutor's office, used any "threat[s]" or coercion.  *See* AG000107–16.  Rather, the transcript shows that the beginning of Landes's interview with Menefee progressed as follows:

LANDES:  What I want you to do is ah tell me a little bit about what happened tonight? What time did you first get together with Delaney?

MENEFEE:  We was together all night. . . . Then later on that evening, we walked along by Lake Merritt and um, he walked to the grocery store.  I stayed in the park while he went down there.  And when he came back he told me that he had shot two people in the store.

LANDES:  He told you that he had shot two people in the store?  Did he say why he shot these two people in the store?

| | | |
|---|---|---|
| 1 | MENEFEE: | No, because I didn't even ask.  You know.  If he said that he told me that he did, I don't know nothing about that because he wouldn't tell me nothing like that. |
| 2 | | |
| 3 | LANDES: | Did he tell you why he was going to the grocery store in Oakland? |
| | MENEFEE: | I guess to rob them or something.  I know I heard a little bit about that. |
| 4 | LANDES: | What did you hear about that? |
| 5 | MENEFEE: | That he was gonna go, go to the store and rob, rob somebody. |

AG000107.  Accordingly, at the beginning of the interview, Menefee told Landes that Petitioner

"shot two people in the store" and that he went to the store "to rob them or something."  *Id.*

Petitioner contends that Menefee was arrested shortly after midnight, *see* AG00075–76,

and thus Menefee was in police custody for approximately two hours before the interview began at

2:04 a.m., AG000107; *see* Pet. Reply at 44 ("[B]y the time the tape recorder was turned on,

Menefee had been in custody for nearly two hours.").  However, Petitioner offers only speculation,

without any support in the record, that Menefee gave different statements during the preceding

two hours, that law enforcement or the prosecution interrogated Menefee during this time, or that

law enforcement used coercive techniques or "berated" Menefee such that she provided false

statements about the Gourmet Market events.  *See* Pet. at 212–13.  Petitioner's "conclusory

assertion" that Menefee was coerced into giving false statements and that the prosecution

knowingly presented these false statements "does not constitute evidence sufficient to make out a

*Napue* claim."  *Henry*, 720 F.3d at 1085; *see also Valverde v. People of the State of California*,

2015 WL 7566807, at *8 (N.D. Cal. 2015) (citing *Henry* for the proposition that, in order for a

petitioner to establish a *Napue* claim, "[c]onclusory assertions will not do.").  Given this record,

the California Supreme Court was not objectively unreasonable in denying Petitioner's argument,

or in denying Petitioner an evidentiary hearing on the basis of this argument.  *See Woods*, 764

F.3d at 1128 (finding that the state court was reasonable in refusing to hold an evidentiary hearing

and rejecting a petitioner's claim where the petitioner "could offer [only] speculation that an

evidentiary hearing might produce testimony or other evidence").

Moreover, even on the assumption that Menefee's statements were false, the California

Supreme Court could have reasonably concluded that the false testimony was not "material," and

27

thus that the third *Napue* prong was not satisfied.  *Henry*, 720 F.3d at 1084.  Specifically, "[i]n assessing materiality under *Napue*, we must determine whether there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"  *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (quoting *Agurs*, 427 U.S. at 103)).  "As in the *Brady* context, the basic question is 'whether . . . [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'"  *Jackson v. Brown*, 513 F.3d 1057, 1072 (9th Cir. 2008) (quoting *Kyles*, 554 U.S. at 434).  Here, apart from Menefee's testimony, substantial physical and testimonial evidence connected Petitioner to the Gourmet Market shooting, as discussed above.  Significantly, a criminalist testified at trial with "virtually absolute certainty" that the bullets that shot the two Gourmet Market victims, Myers and Baeza, came from Petitioner's gun.  *Marks*, 31 Cal. 4th at 207.  Accordingly, even assuming that Menefee gave false statements, the California Supreme Court could have reasonably determined that these statements were not "material," and thus that the prosecution did not violate *Napue*.  *Henry*, 720 F.3d at 1084.

**2. False Testimony Regarding the Taco Bell Shooting**

Second, Petitioner contends that the "prosecuting authorities knowingly and purposefully elicited a late rendition of fabricated facts that included [Petitioner] purportedly telling Menefee that he had shot a girl at Taco Bell."  Pet. at 214.  Petitioner states that, in Menefee's interview with Detective Landes after Menefee's arrest, Menefee stated that she "didn't [know] he shot somebody at Taco Bell," and that it was not until Menefee was cross-examined at the preliminary hearing that Menefee then stated Petitioner "told her on the night of the crimes that he had shot someone at the Taco Bell."  *Id.*

Menefee's interview with Landes shows that Menefee was the first to mention the Taco Bell shooting:

LANDES:       . . . I know that you weren't there when [Petitioner] shot the cab driver.

MENEFEE:    And I wasn't there when he shot the people at the grocery store either.  Or shot somebody at Taco Bell either.  I wasn't there.

LANDES:       Do you know that he shot someone at Taco Bell?

MENEFEE:    No he didn't mention it to me.

28

AG000111.  At the preliminary hearing, Menefee stated on direct examination that Petitioner "told [her] he shot a girl at Taco Bell."  AG000334.  The defense cross-examined Menefee and asked Menefee why she told Landes during her interview that Petitioner did not say anything to Menefee about the Taco Bell shooting.  AG000362.  Menefee stated "[t]he reason why I didn't say nothing because I was afraid to."  AG000363.  Menefee stated that her statement to Landes was a lie, and Menefee again stated that she lied "because [she] was afraid."  *Id.*  Menefee testified that she was telling the truth in her testimony before the court.  *Id.*

Menefee's inconsistent statements do not demonstrate that Petitioner is entitled to relief under *Napue*.  "The fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollections of events, does not establish that the testimony offered at trial was false."  *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997); *see also United States v. Bingham*, 653 F.3d 983, 995 (9th Cir. 2011) ("Certainly [the witness] made inconsistent statements, but that is not enough for a *Napue* violation.").  Moreover, to the extent that Petitioner further argues that Menefee was coerced and misled by the police to give false testimony, *see* Pet. at 214, Petitioner's conclusory speculation regarding Menefee's interactions with the police are insufficient to state a *Napue* claim, as discussed above.  *Henry*, 720 F.3d at 1085.

Furthermore, even on the assumption that Menefee gave false testimony, the California Supreme Court could have reasonably determined that the testimony was not "material," and thus that the third prong of *Napue* was not satisfied.  *Id.* at 1084.  As stated, apart from Menefee's testimony, substantial and testimonial evidence connected Petitioner to the Taco Bell shooting, including ballistic evidence that "suggested" that the bullet that shot Luong came from Petitioner's gun and that several eyewitnesses identified Petitioner as the Taco Bell shooter.  *Marks*, 31 Cal. 4th at 204, 207.  Thus, the California Supreme Court was not objectively unreasonable in denying this claim.

### 3. False Testimony Regarding the Taxi Cab Shooting

Finally, Petitioner contends that "[p]rosecuting authorities knowingly and purposefully

29

United States District Court
Northern District of California

elicited a late rendition of fabricated facts" regarding the taxi cab shooting, including that

Petitioner "confessed to [Menefee] that he shot the taxicab driver immediately upon approaching

her in the alley" and that Petitioner and Menefee "hid underneath an apartment building in an alley

after the shooting." Pet. at 215. However, Petitioner's evidence in support of this assertion

consists solely of the inconsistencies in Menefee's testimony between her interview with

Detective Landes, her preliminary hearing testimony, and her trial testimony. Pet. at 215–18

("Menefee told differing stories at varying times.").

Specifically, in Menefee's interview with Detective Landes, Menefee stated that Petitioner

got out of the taxi cab and told Menefee "to go ahead on," and Menefee went into an alleyway

because she had to use the bathroom. AG000110–11. Petitioner eventually caught up with her in

the alley and told Menefee "[t]hat he had shot the cab driver." *Id.* Menefee then stated that they

went to hide near Petitioner's grandmother's house and that Petitioner did not change his clothes.

AG000111–13.

At the preliminary hearing, Menefee testified that Petitioner "told [her] to leave" the cab

and that she went to an alleyway to use the bathroom. AG000338. Menefee stated that she heard

a gunshot from the area of the cab and then Petitioner came to meet Menefee in the alleyway.

AG000339. However, Menefee stated that the Petitioner did not tell her anything about the cab

driver. AG000340. Menefee then stated that she and Petitioner hid underneath a house and that

they tried to go to Petitioner's grandmother's house. AG000340–42.

At trial, Menefee testified that Petitioner told her to get out of the cab and that she went

into an alleyway to use the bathroom. AG015696. Menefee then stated that she heard a gunshot,

Petitioner ran and "told [her] he shot the cab driver," and Menefee also heard a car horn.

AG015697–98. Menefee and Petitioner then hid underneath a building and then tried to go to

Petitioner's grandmother's house. AG015698–99. On cross-examination, Menefee stated that

Petitioner changed his shirt in the park that day. AG015727–28.

Thus, the record shows that Menefee gave some inconsistent testimony regarding the taxi

cab shooting, such as whether Petitioner told her in the alley that he shot the taxi cab driver, or

30

1    whether Petitioner changed his shirt that day.   Nonetheless, as stated above, "[t]he fact that a

2    witness may have made an earlier inconsistent statement, or that other witnesses have conflicting

3    recollections of events, does not establish that the testimony offered at trial was false." *Croft*, 124

4    F.3d at 1119.  Petitioner again contends that the change in Menefee's testimony "was the result of

5    the unfair and suggestive questioning by prosecuting authorities" and that the prosecution

6    knowingly used and elicited false testimony from Menefee.  Pet. at 216–17.  However, as

7    discussed above, Petitioner offers only conclusory speculation that Menefee was unfairly

8    questioned by officers and that she gave false testimony as a result.  Given this record, the

9    California Supreme Court was not objectively unreasonable in denying Petitioner's claim.  *Henry*,

10   720 F.3d at 1085.

11          Furthermore, even assuming that Menefee did provide false testimony regarding the taxi

12   cab shooting, Petitioner's *Napue* claim would still fail because the California Supreme Court

13   could have reasonably determined that the evidence was not "material." *Id.* at 1084.  Ballistics

14   evidence indicated that the bullet that shot McDermott, the taxi cab driver, came from Petitioner's

15   gun. *Marks*, 31 Cal. 4th at 206–07.  Moreover, although McDermott carried $1 bills for change,

16   he had no paper currency on his body or in his taxi after the shooting, but Petitioner had seven $1

17   bills on his person at the time of his arrest. *Id.*  Further, other eyewitness testimony connected

18   Petitioner to the taxi cab shooting, including a taxi cab driver that testified that individuals

19   matching Petitioner and Menefee's descriptions got into McDermott's cab on the night of the

20   shooting. *Id.*  Given this, the California Supreme Court was not unreasonable in denying

21   Petitioenr's *Napue* claim based on Menefee's allegedly false testimony.

22   **C.     Prosecutor Unfairly Buttressed Menefee's Credibility**

23          Lastly, Petitioner contends that "[t]he trial court erroneously permitted the prosecuting

24   attorney to present evidence that unfairly buttressed Menefee's credibility by vouching for the

25   truthfulness of her testimony and effectively testifying for her." Pet. at 217.  Specifically, an

26   investigator "escort[ed] Menefee on a tour of the locations she described," the investigator plotted

27   these locations "on an aerial photograph," and the investigator testified about these locations to the

28

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

United States District Court
Northern District of California

1    jury.  *Id.*  Petitioner contends that this "impose[d] consistency and order on Menefee's internally

2    inconsistent and dubious testimony."  *Id.*

3            As stated, the California Supreme Court denied Claim 10 without explanation.  Because

4    the California Supreme Court did not provide reasons for its denial of Petitioner's claim, the Court

5    must determine what arguments or theories could have supported the California Supreme Court's

6    decision to reject Petitioner's claim that the trial court erred in allowing the prosecutor to present

7    the investigator's testimony.  *See Richter*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must

8    determine what arguments or theories supported or, as here, could have supported, the state court's

9    decision . . . .").

10           Under federal law, "prosecutorial vouching rises to the level of constitutional violation

11   only if it 'so infect[s] the trial with unfairness as to make the resulting conviction a denial of due

12   process.'"  *Barnes v. Almager*, 526 F. App'x 775, 778 (9th Cir. 2013) (quoting *Darden v.*

13   *Wainwright*, 447 U.S. 168, 181 (1986)); *see also Curtis v. Alameida*, 244 F. App'x 781, 782 (9th

14   Cir. 2007) (applying *Darden* to a habeas petitioner's argument that the prosecutor improperly

15   vouched for two witnesses).  Petitioner does not present any argument as to why the prosecutor's

16   introduction of the investigator's testimony "so infected the trial with unfairness" such that

17   Petitioner was denied due process.  *Barnes*, 526 F. App'x at 778.  The record does not demonstrate

18   that the prosecutor "offer[ed] unsolicited personal views on the evidence" or otherwise vouched

19   for the testimony of Menefee through the investigator.  *See United States v. Young*, 470 U.S. 1, 8

20   (1985); *see* AG015774–AG015791.  Given this, the California Supreme Court could have

21   reasonably concluded that Petitioner's federal due process rights were not violated by the

22   prosecutor's examination of the investigator.

23           Moreover, to the extent that Petitioner argues that the investigator's testimony was "rank

24   hearsay" and should not have been admitted at trial, Pet. at 59, under federal law, "[t]he admission

25   of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally

26   unfair in violation of due process."  *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing

27   *Estelle v. McGuire*, 502 U.S. 62, 67–69 (1991)).  Petitioner objected at trial to some of the

28

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

United States District Court
Northern District of California

investigator's testimony as hearsay, and the trial court admitted the statements under the hearsay exception for prior inconsistent statements.  AG015783.  Petitioner offers no argument as to why the trial court's evidentiary ruling was erroneous, let alone argument as to why the admission of the investigator's testimony rose to the level of a due-process violation.  *See* Pet'r Br. at 59; *Johnson*, 63 F.3d at 930.  Given this, the California Supreme Court could have reasonably concluded that Petitioner's federal due process rights were not violated by the trial court's admission of the investigator's testimony.

Finally, even assuming that the trial court contravened federal law in admitting the investigator's testimony, Petitioner would still need to establish that the trial court's error "had substantial and injurious effect or influence in determining the jury's verdict" in order to establish entitlement to habeas relief.  *Brecht*, 507 U.S. at 638.  This Petitioner cannot do.  As stated, substantial physical and testimonial evidence connected Petitioner to the shooting apart from Menefee's testimony.  A criminalist testified with "virtually absolute certainty" that the bullets that shot Baez and Myers came from Petitioner's gun, ballistics evidence "indicated" that the bullet that shot McDermott came from Petitioner's gun, and ballistics evidence "suggested" that the bullet that injured Luong came from the same source.  *Marks*, 31 Cal. 4th at 207.  "It was 'highly unlikely' that any of the bullets were fired from a gun other than defendant's."  *Id.*  Moreover, at least four eyewitnesses testified as to the shootings and identified Petitioner as the shooter, *id.*, in addition to other testimonial and physical evidence connecting Petitioner to the crimes, such as the paper currency found on Petitioner at the time of his arrest and testimony that Petitioner told another defendant that "he was in for three murders" and that the victims had died because "I shot them."  *Id.* at 205–08.

Thus, given this substantial evidence connecting Petitioner to the crime, Petitioner cannot establish that the trial court's alleged error in admitting the investigator's testimony "resulted in 'actual prejudice,'" to petitioner.  *Brecht*, 507 U.S. at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  Petitioner accordingly cannot establish entitlement to relief under AEDPA, and this subclaim must be denied.  *Id.*

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10

United States District Court
Northern District of California

IV.     **CONCLUSION**

For the foregoing reasons, the Court DENIES Claim 10.  Because Petitioner's arguments as to Claim 10 are unavailing, Petitioner's request for a federal evidentiary hearing as to Claim 10 is also DENIED.  *See Sully*, 725 F.3d at 1075 ("[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.").

**IT IS SO ORDERED.**

Dated: November 15, 2016

_____
LUCY H. KOH
United States District Judge

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIM 10