1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12    DELANEY GERAL MARKS,

Plaintiff,

13

14         v.

15    KEVIN R. CHAPPEL, et al.,

16              Defendants.

17

Case No. 11-CV-02458-LHK

**ORDER DENYING CLAIMS 14
THROUGH 21**

Re: Dkt. Nos. 86, 87

18         In 1994, Petitioner Delaney Geral Marks ("Petitioner") was convicted of two counts of

19    first degree murder with personal use of a firearm, and two counts of attempted premeditated

20    murder and infliction of great bodily injury, and sentenced to death.  On December 14, 2011,

21    Petitioner filed a petition for a writ of habeas corpus before this Court.  ECF No. 3 ("Pet.").

22         The Court has ruled on 12 of Petitioner's 22 claims.  *See* ECF Nos. 52, 74, 75, 76, 77, 81.

23    This Order addresses Claims 14 through 21.  Petitioner requests an evidentiary hearing as to these

24    claims.  For the reasons discussed below, these claims are DENIED, and Petitioner's request for

25    an evidentiary hearing is DENIED.

26    I.    **BACKGROUND**

27

28

1

## A. Factual Background[1]

On October 17, 1990, Petitioner entered a Taco Bell restaurant in Oakland, California. After ordering, he shot employee Mui Luong ("Luong") in the head. Luong survived the shooting but remained in a persistent vegetative state. Petitioner then entered the Gourmet Market, not far from the Taco Bell. There, Petitioner shot John Myers ("Myers") and Peter Baeza ("Baeza"). Baeza died at the scene but Myers survived. Later that evening, Petitioner and his girlfriend, Robin Menefee ("Menefee"), took a cab driven by Daniel McDermott ("McDermott"). Petitioner shot and killed McDermott. *Marks*, 31 Cal. 4th at 204–06.

Petitioner was arrested shortly after McDermott was shot. Lansing Lee ("Lee"), a criminalist, testified at trial with "virtual absolute certainty" that the bullets that shot Baeza and Myers came from Petitioner's gun. *Id.* at 207. Lee also testified that his analysis "indicated" that the bullet that shot McDermott came from Petitioner's gun and "suggested" that the bullet that injured Luong also came from the same source. *Id.* At least four eyewitness identified Petitioner as the shooter. *Id.* at 205. Further, although McDermott carried $1 bills in his taxi in order to make change, McDermott had no paper currency on his body or in his taxi after the shooting. Defendant, however, was arrested with seven $1 bills on his person. *Id.* at 206–07. Petitioner was also overheard telling another defendant that "he was in for three murders" and that the victims had died because "I shot them." *Id.* at 208.

At trial, Petitioner testified and denied all of the shootings. *Id.* at 207. The defense also presented evidence that Petitioner's hands did not test positive for gunshot residue. *Id.* at 208.

On April 24, 1994, the jury convicted Petitioner of two counts of first degree murder with personal use of a firearm, and two counts of attempted premeditated murder with personal use of a firearm and infliction of great bodily injury.

During the penalty phase, the prosecutor presented in aggravation evidence of Petitioner's

---

[1] The following facts are taken from the California Supreme Court's opinion on direct appeal. *See People v. Marks*, 31 Cal. 4th 197, 203–14 (2003). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

past violent conduct, including incidents of domestic violence and violent conduct while incarcerated. *Id.* at 208–10. The prosecutor also presented evidence of the effect of the murders on the families of the victims. *Id.* at 210–11. In mitigation, Petitioner testified as to his history of seizures. *Id.* at 212. Other witnesses testified that Petitioner had grown up in a strong family environment, and had not engaged in problematic behavior until he was discharged from the army and began using drugs. *Id.* at 212–13. Petitioner's daughter testified that Petitioner had never hit her, and that she saw him regularly when he was not incarcerated. *Id.* at 213. On May 6, 1994, the jury set the penalty for the capital crimes at death. *Id.* at 203.

**B.    Procedural History**

On July 24, 2003, the California Supreme Court affirmed the conviction and sentence on direct appeal. *People v. Marks*, 31 Cal. 4th 197 (2003). The U.S. Supreme Court denied certiorari on May 3, 2004. *Marks v. California*, 541 U.S. 1033 (2004).

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. On March 16, 2005, the California Supreme Court ordered Respondents to show cause in the Alameda County Superior Court why the death sentence should not be vacated and Petitioner re-sentenced to life without parole on the ground that Petitioner was intellectually disabled within the meaning of *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that intellectually disabled individuals may not be executed. AG023690.[2] The California Supreme Court denied the remaining claims in the petition on the merits without explanation. In addition to the merits decision, as separate grounds for denial, the California Supreme Court held that four of Petitioner's claims were procedurally barred.

The Alameda County Superior Court conducted an evidentiary hearing on the issue of Petitioner's alleged intellectual disability. On June 13, 2006, the Superior Court denied the petition, and found that Petitioner had failed to prove by a preponderance of the evidence that he is intellectually disabled within the meaning of *Atkins*. AG023700–22. On August 14, 2006,

---

[2] Citations to "AG" refer to the Bates-stamped page numbers identified in the California Attorney General's lodging of the state court record with this Court.

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIMS 14 THROUGH 21

1    Petitioner filed a further petition for writ of habeas corpus on the issue of his intellectual disability.

2    The petition was denied by the California Supreme Court on December 15, 2010.  AG028382.

3         On December 14, 2011, Petitioner filed his federal petition for writ of habeas corpus in this

4    Court.  ECF No. 3.  Respondent filed a motion for summary judgment on Claims 2, 3, and 5 on

5    March 26, 2013.  ECF No. 37.  Petitioner cross-moved for summary judgment on Claims 2, 3, and

6    5 on March 28, 2013.  ECF No. 38.  Both Petitioner and Respondent filed opposition briefs on

7    June 10, 2013.  ECF Nos. 44, 45.  On August 8, 2013, Petitioner and Respondent filed reply

8    briefs.  ECF Nos. 48, 49.  The claims were denied, and summary judgment in favor of Respondent

9    granted on June 25, 2015.  ECF No. 52.

10        On December 15, 2015, Petitioner and Respondent filed opening briefs on the merits as to

11   Claims 1, 4, 6, 7, 8, 9, 10, and 11.  ECF No. 62; 63.  Petitioner filed a response on February 11,

12   2016.  ECF No. 63.  Respondent filed a response on February 12, 2016.  ECF No. 65.

13        The Court denied Claims 1, 6, and 7 on September 15, 2016.  ECF No. 74.  The Court

14   denied Claims 9 and 11 on September 20, 2016.  ECF No. 75.  The Court denied Claims 4 and 8

15   on September 27, 2016.  ECF Nos. 76, 77.  The Court denied Claim 10 on November 15, 2016.

16   ECF No. 81.

17        On February 3, 2017, Petitioner and Respondent filed opening briefs on the merits of

18   Claims 12 through 22.  ECF Nos. 86 ("Pet'r Br."), 87 ("Resp. Br.").  On March 29, 2017,

19   Petitioner and Respondent filed responses.  ECF Nos. 89 ("Pet'r Opp."), 90 ("Resp. Opp.").

20        On June 1, 2017, this Court issued an order denying Claim 12.  ECF No. 91.

21   **II.    LEGAL STANDARD**

22   **A.    Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2254(d))**

23        Because Petitioner filed his original federal habeas petition in 2011, the Anti-Terrorism

24   and Effective Death Penalty Act of 1996 ("AEDPA") applies to the instant action.  *See Woodford*

25   *v. Garceau*, 538 U.S. 202, 210 (2003) (holding that AEDPA applies whenever a federal habeas

26   petition is filed after April 24, 1996).  Pursuant to AEDPA, a federal court may grant habeas relief

27   on a claim adjudicated on the merits in state court only if the state court's adjudication "(1)

28

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

### 1. Contrary To or Unreasonable Application of Clearly Established Federal Law

As to 28 U.S.C. § 2254(d)(1), the "contrary to" and "unreasonable application" prongs have separate and distinct meanings. *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court."). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 412–13.

A state court's decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Holdings of the U.S. Supreme Court at the time of the state court decision are the sole determinant of clearly established federal law. *Williams*, 529 U.S. at 412. Although a district court may "look to circuit precedent to ascertain whether [the circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent," *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curium), "[c]ircuit precedent cannot refine or sharpen a general principle of [U.S.] Supreme Court jurisprudence into a specific legal rule," *Lopez v. Smith*, 135 S. Ct. 1, 4, (2014) (per curium) (internal quotation marks omitted).

### 2. Unreasonable Determination of the Facts

In order to find that a state court's decision was based on "an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court," *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

In examining whether a petitioner is entitled to relief under 28 U.S.C. § 2254(d)(1) or § 2254(d)(2), a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). In the event that a federal court "determine[s], considering only the evidence before the state court, that the adjudication of a claim on the merits resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts," the federal court evaluates the petitioner's claim *de novo*. *Hurles*, 752 F.3d at 778. If error is found, habeas relief is warranted if that error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Id.* at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

## B. Federal Evidentiary Hearing (28 U.S.C. § 2254(e))

Under *Cullen v. Pinholster*, habeas review under AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 180–81. The Ninth

Circuit has recognized that *Pinholster* "effectively precludes federal evidentiary hearings" on claims adjudicated on the merits in state court. *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013); *see also Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a district court may ever chose to hold an evidentiary hearing *before* it determines that § 2254(d) has been satisfied . . . an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted).

### III.    DISCUSSION

This Order addresses Claims 14 through 21 of Petitioner's habeas petition. For the reasons discussed below, the Court finds that Petitioner is not entitled to habeas relief on Claims 14 through 21.

### A.    Claim 14

Petitioner asserts in Claim 14 that he "was deprived of due process and his state-created liberty interest in relief based on the undisputed facts and evidence demonstrating he was ineligible for the death penalty pursuant to" *Atkins v. Virginia*, 536 U.S. 304 (2002). Pet. at 288.

Petitioner's argument in Claim 14 is substantially identical to Petitioner's argument in Claim 5 of Petitioner's federal habeas petition, in which Petitioner argued that he was ineligible for the death sentence pursuant to *Atkins* because Petitioner was intellectually disabled. Pet. at 93; *see Marks v. Davis*, 112 F. Supp. 3d 949, 985–93 (N.D. Cal. June 25, 2015). Petitioner raised this claim in his state habeas petition and the California Supreme Court ordered Respondent to show cause why Petitioner's death sentence should not be vacated under *Atkins.* In response, a ten-day evidentiary hearing was conducted by Judge Horner of the Alameda County Superior Court in 2006. *Marks*, 112 F. Supp. 3d at 985–93 (detailing further procedural history). At the conclusion of that evidentiary hearing, the trial court issued a twenty-six page order that concluded that Petitioner was not intellectually disabled within the meaning of California Penal Code § 1376, and thus under the meaning of *Atkins*. *See* AG028437; *see also Marks*, 112 F.Supp. 3d at 985. Petitioner argued to the California Supreme Court that the trial court erred in its determination, but

7

the California Supreme Court rejected Petitioner's claim. AG028382.

In Claim 5 of Petitioner's federal habeas petition, Petitioner argued to this Court that the California Supreme Court's decision to affirm the trial court's denial of Petitioner's *Atkins* claim was contrary to the United States Supreme Court's decision in *Atkins* and an unreasonable determination of the facts presented at Petitioner's evidentiary hearing. Pet. at 93. This Court denied Claim 5 on June 25, 2015. *Marks*, 112 F. Supp. 3d at 985–93. As this Court explained, "*Atkins* establishes that 'the Eighth and Fourteenth Amendments to the Constitution forbid the execution of persons with intellectual disability." *Id.* at 985 (quoting *Hall v. Florida*, 134 S. Ct. 1986 (2014)). However, "*Atkins* did not provide definitive procedural or substantive guides for determining when a person who claims [intellectual disability] falls within the protection of the Eighth Amendment," but rather left to the states "the task of developing appropriate ways to enforce the constitutional restriction upon their execution of sentences." *Id.* (internal quotation marks omitted). In response to *Atkins*, California enacted California Penal Code § 1376, which defines intellectual disability as "the condition of significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested before 18 years of age." Cal. Penal Code § 1376(a).

In this Court's order denying Claim 5, the Court first explained that the trial court's reliance on California Penal Code § 1376(a) was not contrary to nor an unreasonable application of the United States Supreme Court's decision in *Atkins* because California's "definition of intellectual disability generally 'conform[s] to' 'the clinical definitions referenced in *Atkins*.'" *Marks*, 112 F. Supp. 3d at 986 (quoting *In re Hawthorne*, 35 Cal. 4th 40, 47 (2005)). Next, the Court thoroughly analyzed the record and the trial court's determination that Petitioner was not intellectually disabled pursuant to California Penal Code § 1376(a). *See id.* After considering the record and the trial court's decision, this Court concluded that Petitioner failed to establish that the California Supreme Court was objectively unreasonable in affirming the trial court's factual finding that Petitioner was not intellectually disabled within the meaning of California Penal Code § 1376(a), and thus within the meaning of *Atkins*. *Id.* at 993. Accordingly, this Court denied

8

Claim 5.

Petitioner's allegations and arguments in Claim 14 are substantially identical to Petitioner's allegations in Claim 5. Indeed, Petitioner incorporates into Claim 14 the facts that Petitioner alleged in Claim 5. *See* Pet. at 288. Petitioner offers no additional argument in his briefing on Claim 14 to explain why relief on Claim 14 is warranted in light of this Court's order denying Claim 5. *See* Pet'r Br. at 28. Accordingly, for the reasons set forth by the Court in the Court's June 25, 2015 order denying Claim 5, the Court finds that the California Supreme Court was not unreasonable in rejecting Claim 14. Claim 14 must be denied.

## C.    Claim 15

Petitioner asserts in Claim 15 that the "jury was instructed to give equal aggravating weight to the existence of" the special circumstance that Petitioner intentionally killed a transportation worker, which Petitioner asserts is not a special circumstance that supports a death sentence. Pet. at 303–04. According to Petitioner, "[i]n the absence of this special circumstance, [Petitioner] would not have been sentenced to death." Pet'r Br. at 28. Petitioner thus argues that the jury's sentence of death, which Petitioner argues was based on the transportation worker special circumstance, violates the Eighth and Fourteenth Amendments to the United States Constitution. *Id.*

Petitioner raised this issue to the California Supreme Court on direct review, and the California Supreme Court rejected Petitioner's claim on the merits. *Marks*, 31 Cal. 4th at 233. For the reasons discussed below, the Court finds that the California Supreme Court was not unreasonable in rejecting this claim. The Court first discusses the relevant facts and procedural history, and then the Court discusses Petitioner's arguments in support of Claim 15.

### 1.    Relevant Facts and Procedural History

In California, "[t]o render a defendant eligible for the death penalty, the jury must find true at least one of the special circumstances listed in [California Penal Code] section 190.2" *Id.* "Once it does so, the jury must then decide in a penalty phase whether the defendant should be sentenced to death or to life imprisonment without possibility of parole. The jury weighs the

factors listed in section 190.3 in making this determination." *Id.*

Petitioner was charged at trial with three special circumstances: (1) that Petitioner committed multiple murders, Cal. Penal Code § 190.2(a)(3); (2) that Petitioner killed during the course of a robbery, Cal. Penal Code § 190.2(a)(17)(A); and (3) that the Petitioner killed McDermott while McDermott was performing McDermott's job as a transportation worker, Cal. Penal Code § 190.25. *See* AG017451. The jury found that each of these three charged special circumstances was true. *See* AG001932. Accordingly, the jury found Petitioner death eligible under California Penal Code § 190.2. *See id.* After the penalty phase of trial, and after weighing the factors listed in § 190.3, the jury sentenced Petitioner to death. *Id.*

On direct appeal to the California Supreme Court, Petitioner argued that his penalty phase verdict was invalid because the transportation worker special circumstance is not a special circumstance listed in § 190.2 that supports the death penalty. *See Marks*, 31 Cal. 4th at 234. Rather, the transportation worker special circumstance is a special circumstance listed in *§ 190.25*, which states that the transportation worker special circumstance supports a sentence of life in prison without the possibility of parole. *See* Cal. Penal Code § 190.25. According to Petitioner, the prosecutor should not have argued the fact that McDermott was a transportation worker to the jury, and the jury's return of a verdict of death meant that the jury had used an improper basis— the fact that McDermott was a cab driver—in imposing the death sentence. *Marks*, 31 Cal. 4th at 234.

The California Supreme Court rejected Petitioner's argument on direct review. Specifically, the California Supreme Court reasoned that the other two special circumstances charged to the jury in Petitioner's case—the special circumstance of committing multiple murders and the special circumstance of committing a murder during a robbery—are both special circumstances that are listed in § 190.2. *See* § 190.2(a)(3) & (a)(17)(A). Accordingly, both of the two other special circumstances charged to the jury supported a finding of death eligibility. *Id.* The jury found both of these special circumstances present in Petitioner's case. *Marks*, 31 Cal. 4th at 234; *see* AG001932. Accordingly, the California Supreme Court reasoned, regardless of the

10

fact that the transportation worker special circumstance was *also* presented to the jury, and regardless of the fact that the transportation worker special circumstance did not itself support death eligibility, the jury properly found Petitioner death eligible based on the presence of the other two special circumstances, both of which are listed in § 190.2. *See* Marks, 31 Cal. 4th at 234. As the California Supreme Court explained, the presence of the multiple murder special circumstance and the murder committed during a robbery special circumstance "properly rendered the defendant death-eligible [under § 190.2], subject to the penalty phase" where the jury would apply "the section 190.3 factors." *Marks*, 31 Cal. 4th at 234.

The California Supreme Court explained further that, once Petitioner was properly found death eligible and subject to the penalty phase of trial, the jury was free to consider the fact that McDermott was working as a transportation worker in weighing the § 190.3 factors. *Marks*, 31 Cal. 4th at 234. Specifically, the California Supreme Court explained, "[a]mong the [section 190.3] factors is factor (a): 'The circumstances of the crime of which the defendant was convicted in the instant proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.'" *Id.* The California Supreme Court reasoned that the fact that Petitioner murdered McDermott while McDermott was doing his job as a taxicab driver was "a circumstance of the charged crime" within the meaning of § 190.3(a). *Id.*

Thus, although the fact that McDermott was a transportation worker could not render Petitioner death *eligible*, the fact that McDermott was a transportation worker could nonetheless be argued by the prosecutor and considered by the jury in the jury's penalty phase determination under § 190.3. The California Supreme Court reasoned:

> If we were to accept defendant's argument [that it was improper for the jury to consider the fact that McDermott was working as a taxicab driver at the time of the murder], it would turn the circumstance of killing a taxi driver on duty, a fact the Legislature has deemed worthy of special sanction (albeit less than some other special circumstances), into a shield from liability. If the Legislature had never enacted section 190.25, the prosecutor still would have been free to argue that the circumstances of the killing, which included the killing of a taxi driver doing his job, supported a death verdict. (§ 190.3, factor (a).) There would be no basis for reversal, as both the multiple-murder and robbery-murder special-circumstance

11

findings were valid. By contrast, according to defendant, because the Legislature decided the killing of a taxi driver supported a sentence of life imprisonment without parole, we must now reverse. We decline to infer such an exculpatory effect from the Legislature's decision to increase the penalty for murdering transportation workers in cases where there are no other special circumstances.

*Id.* at 281. Thus, the California Supreme Court denied Petitioner's claim.

### 2. Claim 15 of Petitioner's Federal Habeas Petition

Petitioner presents the same argument in Claim 15 of his federal habeas petition as Petitioner presented to the California Supreme Court on direct appeal. Specifically, Petitioner argues in Claim 15 that the use of the transportation worker special circumstance during his trial "had a substantial and injurious effect on the verdict in violation of the Due Process Clause and the prohibition against arbitrary and capricious infliction of capital punishment." Pet'r Br. at 28.

However, Petitioner provides no argumentation in Claim 15 to explain why the California Supreme Court's reasoning was incorrect in rejecting Petitioner's claim on direct appeal. *See id.* As the California Supreme Court explained, the jury found *three* special circumstances present in Petitioner's case: (1) that there were multiple murders; (2) that the murder was committed during a robbery; and (3) that the victim was a transportation worker. *Marks*, 31 Cal. 4th at 234; *see* AG016580 (finding special circumstance of more than one offense of murder); AG016580–81 (finding special circumstance of committing murder during a robbery); AG016581 (finding special circumstance of killing McDermott while McDermott was engaged in his duties as a taxi driver). Accordingly, the prosecution's presentation of the transportation worker special circumstance to the jury during the death eligibility determination was harmless. Although the fact that McDermott was a transportation worker could not render Petitioner death eligible under § 190.2, the *other* two special circumstances found by the jury—the fact that Petitioner committed multiple murders and the fact that Petitioner murdered during the course of a robbery—properly rendered Petitioner death eligible under § 190.2. *See Marks*, 31 Cal. 4th at 234; Cal. Penal Code § 190.2.

Further, once the jury properly found Petitioner death eligible under § 190.2, as the California Supreme Court reasoned, the jury was free to weigh under § 190.3(a) the "circumstance of the crime" that McDermott was performing his job as a taxicab driver at the time that Petitioner

12

shot McDermott. *See Marks*, 31 Cal. 4th at 234.

Accordingly, there is no basis for Petitioner's assertion that Petitioner was improperly rendered eligible for the death penalty on the basis of an improper special circumstance, and it was not a violation of Petitioner's Eighth or Fourteenth Amendment rights for the prosecutor to argue at trial that McDermott was "doing his job" as a taxi driver at the time that he was killed. *See* AG017451. The California Supreme Court did not unreasonably apply federal law in rejecting Petitioner's claim. Claim 15 must be denied.

**D.     Claim 16**

In Claim 16, Petitioner asserts that "the state presented constitutionally infirm, unreliable, and incredible evidence of a prior criminal act at the penalty phase of trial." Pet'r Br. at 29. This argument is based on aggravating evidence presented during the penalty phase of Petitioner's trial that Petitioner had a prior conviction for battery of a police officer. Specifically, evidence was presented that Petitioner ran over Officer Terry Lewis ("Officer Lewis") with Petitioner's car in 1982. Petitioner argues that presentation of this evidence at trial violated Petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights. *See* Pet. at 294–95; Pet'r Br. at 28.

Petitioner raised this claim to the California Supreme Court and the California Supreme Court denied this claim on the merits because Petitioner failed to establish that his prior conviction for battery of a police officer was invalid. *Marks*, 31 Cal. 4th at 235. For the reasons discussed below, the Court finds that the California Supreme Court was not unreasonable in rejecting this claim. The Court first discusses the facts presented during the penalty phase about this incident, and then the Court discusses Petitioner's argument in Claim 16.

**1.     Facts Presented at Trial**

Shirley Hitchens ("Hitchens") testified during the penalty phase that she had lived with Petitioner for approximately a year, but that she ultimately left Petitioner because he had mentally and physically abused her. AG016881; *see Marks*, 31 Cal. 4th at 209. On January 31, 1982, approximately two months after Hitchens left Petitioner, Petitioner approached Hitchens in his car and wanted Hitchens to get into the car. AG016880–83. Hitchens did not get in the car because

13

she was scared of Petitioner. *Id.* Hitchens testified that she ran to Bobby Jones ("Jones") for help. AG016883–84. Petitioner tried to physically get Hitchens into his car, but Jones intervened. AG016886.

Jeff Heilbronner ("Heilbronner") testified during the penalty phase that he witnessed Petitioner chase Jones around Petitioner's vehicle. AG016894–96; *see Marks*, 31 Cal. 4th at 209. Heilbronner testified that Petitioner was wielding a knife. AG01894–96. The police soon arrived, including Officer Lewis, who also testified during the penalty phase of Petitioner's trial. After the police arrived at the scene, Petitioner dropped the knife that he was holding and Petitioner entered the driver's side of his vehicle. AG016918. Jones approached Petitioner's car and began banging on the driver's side window. The police ordered Jones to stop banging on the window, but Jones refused to stop. AG016919. Officer Lewis testified that he grabbed Jones, and the two men fell to the street. *Id.*

Petitioner remained in his vehicle. Another officer at the scene twice ordered Petitioner to exit his vehicle, but Petitioner did not comply. AG016901. Instead, Petitioner put his car into reverse and began driving backwards. The police warned Petitioner that individuals were behind Petitioner's car, and that Petitioner should not back the car up. *Id.* Petitioner reversed the car and drove over Officer Lewis and Jones. Officer Lewis testified that, if Petitioner had backed the car up in a straight direction, the vehicle would have run over Officer Lewis's lower leg. AG016922. However, Petitioner turned the wheel and the vehicle ran over Officer Lewis's lower back. *Id.*

Officer Lewis remained on the ground for approximately 30 seconds after he was run over, but Officer Lewis was able to stand up. AG016922–23. Officer Lewis went to the hospital, and Officer Lewis stayed at the hospital for approximately 45 minutes to one hour. AG016926–27. Photographs of Officer Lewis, which were taken at the hospital, were presented at trial. The photographs showed Officer Lewis with dirt on his police uniform, a bruise on his arm, and a scrape on his knee. AG016923–26. Officer Lewis was not admitted to the hospital, and Officer Lewis did not miss any work as a result of the incident. AG01927–28.

Petitioner also testified during the penalty phase of trial about the incident. According to

14

Petitioner, Jones was chasing Petitioner around Petitioner's car, rather than Petitioner chasing Jones. AG017166–67. When Petitioner was asked whether he had run over Officer Lewis with his car, Petitioner stated "[Officer Lewis] went to the hospital and returned to work in five minutes, so how could I have ran him over?" AG017167. Petitioner testified that Petitioner's car "might have hit [Officer Lewis's] leg" because Petitioner had "no indication of an officer in the area." AG017168. Petitioner testified that he did not "actually think [Petitioner] ran over Officer Lewis' body. And if [Petitioner] had injured [Officer Lewis] it was an accident" because Petitioner was "fleeing from being murdered." AG017168–69.

### 2. Claim 16 of Petitioner's Federal Habeas Petition

Petitioner argues in Claim 16 that the allegations that Petitioner ran over Officer Lewis with his car "were materially false and misleading, and there was no reliable or credible evidence that was sufficient to prove the commission of the offense beyond a reasonable doubt." Pet. at 295. Specifically, Petitioner argues that it was "incredible" that Officer Lewis was run over by a vehicle but that Officer Lewis did not suffer any injuries. *Id.* Petitioner asserts that "[r]easonably available witnesses, who included but were not limited to Sherry Uecker, a passenger in the car with [Petitioner] during the alleged incident, would have testified that there was no indication that the car had run over anything." *Id.* at 277. Moreover, Petitioner claims that Jones, who was purportedly underneath Lewis at the time that the car struck Officer Lewis, "would have testified that [Petitioner] did not strike any police officer with his car." *Id.* According to Petitioner, the state's introduction of false and misleading evidence violated Petitioner's due process rights. Pet. at 306.

The California Supreme Court was not unreasonable in rejecting Petitioner's claim that his federal constitutional rights were violated by the introduction of "materially false and misleading" evidence about his prior battery of a police officer. Petitioner states only that it is not "credible" that Officer Lewis could have been run over by a vehicle and not suffered any injuries. Pet'r Br. at 28. However, Petitioner was convicted of battery of a peace officer for this conduct. Moreover, Officer Lewis's testimony at Petitioner's penalty phase trial was corroborated by the testimony of

15

another witness at that trial, Heilbronner, a witness to the incident. *See* AG016894–98. Heilbronner testified that Petitioner "put the car in reverse at a high rate of speed, running over the police officer and the other person on the ground." AG016899. Moreover, although Officer Lewis did not suffer any significant injuries from the event, Officer Lewis nonetheless visited the emergency room after the incident, and Officer Lewis remained at the hospital for forty-five minutes to an hour. AG016926–27. This further corroborates Officer Lewis's testimony that Petitioner ran over Officer Lewis with Petitioner's vehicle.

In addition, Petitioner testified at trial, and Petitioner himself recognized that Petitioner "might have hit [Officer Lewis's] leg" with his vehicle because Petitioner had "no indication of an officer in the area" when Petitioner was reversing his vehicle. AG017168. Furthermore, although Petitioner states in his habeas petition that Sherry Uecker and Jones would have testified at trial that the incident did not occur, Petitioner did not present to the California Supreme Court any declarations from these witnesses, or any other evidence to suggest that Petitioner did not hit Officer Lewis with his vehicle. Rather, Petitioner only speculates and conclusively asserts that the state relied on "materially false and misleading evidence" that Petitioner ran over Officer Jones with Petitioner's car, *see* Pet. at 294, which is not sufficient to warrant habeas relief. *See Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013) (rejecting petitioner's "conclusory assertion" that a detective gave false testimony at trial as insufficient to warrant habeas relief).

Given this record, the California Supreme Court was not objectively unreasonable in denying Petitioner's argument that his federal constitutional rights were violated by the state's introduction of evidence that Petitioner ran over Officer Lewis with Petitioner's vehicle. Claim 16 must be denied.

**E.      Claim 17**

In Claim 17 of his federal habeas petition, Petitioner asserts that the trial court "unconstitutionally failed to provide the jurors with accurate, responsive or helpful guidance in answer to their question during penalty phase deliberations." Pet. at 296; Pet'r Br. at 28–29. Petitioner presented this argument to the California Supreme Court on direct appeal and the

United States District Court
Northern District of California

California Supreme Court rejected Petitioner's claim. *Marks*, 31 Cal. 4th at 237. For the reasons discussed below, the Court finds that the California Supreme Court was not unreasonable in rejecting this claim. The Court first discusses the relevant facts and procedural history, and then discusses Petitioner's arguments in Claim 17.

**1. Relevant Facts and Procedural History**

During penalty phase deliberations, the jury asked the trial court: "If a juror comes to the conclusion that the aggravating circumstances far outweigh the mitigating circumstances must the juror then automatically choose the death penalty?" AG017682. The trial court responded by reading California Jury Instruction 8.88 to the jurors:

> After having heard all of the evidence and after having heard and considered the arguments of counsel, you shall consider, take into account and be guided by the applicable factors, aggravating and mitigating circumstances upon which you have been instructed.
>
> An aggravating factor is any fact, condition or event attending the commission of a crime which increases its guilt or enormity or adds to its injurious consequences which is above and beyond an element of the crime itself.
>
> A mitigating circumstance is any fact, condition, or event which as such does not constitute a justification or excuse for the crime in question, but may be considered as an extenuating circumstance in determining the appropriateness of the death penalty.
>
> . . .
>
> The weighing of aggravating and mitigating circumstances does not mean a mere mechanical counting of factors on each side of an imaginary scale or the arbitrary assignment of weight to any of them. You are free to assign whatever moral or sympathetic value you deem appropriate to each and all of the various factors you are permitted to consider. In weighing the various circumstances you determine under the relevant evidence which penalty is justified and appropriate by considering the totality of the aggravating circumstances with the totality of the mitigating circumstances. To return a judgment of death each of you must be persuaded that the aggravating circumstances are so substantial in comparison with the mitigating circumstances that it warrants death instead of life without parole.

AG017682–83.

Petitioner argued to the California Supreme Court on direct appeal that the trial court

1    should have simply answered "no" to the jury's question, and that the trial court's failure to do so

2    violated Petitioner's rights.  The California Supreme Court rejected Petitioner's claim.  *Marks*, 31

3    Cal. 4th at 237.  Specifically, the California Supreme Court noted that the trial court's "instruction

4    [wa]s a correct statement of law." *Id.* at 237.  Moreover, the California Supreme Court also held

5    that Petitioner had waived this claim because Petitioner failed to object at trial to the trial court's

6    instruction. *Id.*

7        **2.  Claim 17 of Petitioner's Federal Habeas Petition**

8        Petitioner argues in Claim 17 that Petitioner is entitled to habeas relief because the trial

9    court's "jargon-laden" answer to the jury's question violated Petitioner's rights under the Fifth,

10   Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.  Pet. at 297.[3]

11   According to Petitioner, "[i]t is reasonably probable that" a juror, if given a clear answer from the

12   trial court in response to the jury's question, "would have given full mitigating effect" to the fact

13   that Petitioner suffered from mental illness and would not have imposed the death sentence. *Id.* at

14   298.

15       Petitioner is not entitled to relief on the basis of Claim 17.  The trial court read the jury a

16   correct jury instruction that was responsive to the jury's question about how the jury should weigh

17   the aggravating and mitigating circumstances in imposing the death penalty. *See* AG017682–83;

18   CALJIC 8.88.  The trial court explained to the jury that the jurors were not to "mechanical[ly]

19   count[]" the aggravating factors and mitigating evidence, but rather that the jurors were "free to

20   assign whatever moral or sympathetic value" the jurors deemed appropriate, and to consider the

21   totality of the circumstances.  AG017683.  The Court "presume[s] that jurors follow the [trial

22   court's] instructions." *Fields v. Brown*, 503 F.3d 755, 782 (9th Cir. 2007).  Accordingly, because

23   the trial court gave the correct instruction in response to the jurors' question, and because the

---

[3] Petitioner argues that he is entitled to *de novo* review of this claim because the California
Supreme Court did not resolve this claim on the merits, but rather held that the claim was procedurally
defaulted because Petitioner did not object at trial to the jury instruction.  According to Petitioner,
he was not required to object at trial.  The Court need not resolve this question.  Even if this Court
were to review Claim 17 *de novo*, Petitioner is nonetheless not entitled to habeas relief.  As stated
above, the trial court's instruction to the jury was a correct statement of the law.

United States District Court
Northern District of California

Court must presume that the jurors followed the trial court's instruction, Petitioner cannot establish that the trial court's reading of a correct jury instruction violated Petitioner's federal constitutional rights. The California Supreme Court was not unreasonable in rejecting this claim.

## F.    Claim 18

In Claim 18, Petitioner asserts that California's death penalty statute fails to narrow the class of offenders eligible for the death penalty, and thus results in imposition of the death sentence in an arbitrary and capricious manner. Pet. at 298–99. Petitioner raised this argument to the California Supreme Court in Petitioner's direct appeal, and the California Supreme Court rejected Petitioner's claim on the merits. *Marks*, 31 Cal. 4th at 283. Specifically, the California Supreme Court "reiterate[d]" its prior holdings in several cases that "California's death penalty law sufficiently narrows the class of death-eligible defendants." *Id.*

The California Supreme Court was not unreasonable in rejecting Petitioner's argument. The Ninth Circuit considered and rejected a substantially similar "failure to narrow" claim in *Karis v. Calderon*, 283 F.3d 1117, 1141 n. 11 (9th Cir. 2002). There, the Ninth Circuit explained that "[t]he special circumstances in California apply to a subclass of defendants convicted of murder and are not unconstitutionally vague." *Id.* The Ninth Circuit held that "California has identified a subclass of defendants deserving of death and by doing so, it has 'narrowed in a meaningful way the category of defendants upon whom capital punishments may be imposed.'" *Id.* (quoting *Arave v. Creech*, 507 U.S. 463, 476 (1993)). Similarly, in *Mayfield v. Woodford*, 270 F.3d 915, 924 (9th Cir. 2001), the Ninth Circuit denied a certificate of appealability for a habeas petitioner's claim that California's death penalty was unconstitutional because it failed to narrow the category of defendants upon whom the death penalty could be imposed. Specifically, the Ninth Circuit concluded that "[a] reasonable jurist could not debate . . . that the 1978 California [death penalty] statute, which narrowed the class of death-eligible defendants at both the guilt and penalty phases, was constitutional." *Id.*

Moreover, this Court has also rejected a substantially similar habeas claim in which a petitioner asserted that California's death penalty statute was unconstitutional because it "fail[ed]

19

to adequately narrow the class of death-eligible individuals." *Ervin v. Davis*, 2016 WL 3253942, at *7–8 (N.D. Cal. June 14, 2016) (rejecting argument that California Penal Code §§ 190.2 and 190.3 were unconstitutional and citing additional district court opinions that have rejected similar arguments).

Petitioner does not raise any argument in support of his habeas petition that calls this precedent into question. *See* Pet'r Br. at 19. Accordingly, in light of the Ninth Circuit and district court precedent discussed above, the Court finds that Petitioner is not entitled to relief on Claim 18. The California Supreme Court was not objectively unreasonable in rejecting Petitioner's claim that California's death penalty statute is unconstitutional because it fails to narrow the class of death-eligible individuals.

## G. Claim 19

In Claim 19 of Petitioner's habeas petition, Petitioner raises several additional arguments regarding the constitutionality of California's death penalty law. Specifically, Petitioner contends that the California death penalty law "fail[s] to require the jury to find that aggravation outweighed mitigation and death was the appropriate punishment beyond a reasonable doubt," and that California fails to require the jury to make written findings. *See* Pet'r Br. at 29; Pet. at 321–24. Petitioner raised these arguments to the California Supreme Court on direct review, and the California Supreme Court rejected Petitioner's claims on the merits. *Marks*, 31 Cal. 4th at 283–84. The California Supreme Court "reiterate[d]" its prior holdings that California's death penalty law is constitutional. *See id.*

Petitioner has not established that the California Supreme Court's rejection of Claim 19 was an unreasonable application of federal law. Both the Ninth Circuit and district courts within the Ninth Circuit have rejected arguments that are substantially identical to the constitutional arguments raised by Petitioner in Claim 19. For example, in *Williams v. Calderon*, 52 F.3d 1465, 1485 (9th Cir. 1995), the Ninth Circuit concluded that California's death penalty statute "offers constitutionally-sufficient guidance to jurors to prevent arbitrary and capricious application," that California's death penalty statute "ensures meaningful appellate review," and that California's

20

death penalty statute "need not require written jury findings in order to be constitutional." *Id.* (internal citations omitted). The Ninth Circuit further concluded in *Williams* that "the failure of [California's death penalty] statute to require a specific finding that death is beyond a reasonable doubt the appropriate penalty does not render it unconstitutional." *Id*; *see also Ervin*, 2016 WL 3253942, at *8–9 (rejecting similar arguments that California's death penalty statute is unconstitutional because it fails to require aggravating factors be proven beyond a reasonable doubt or that death must be found the appropriate penalty beyond a reasonable doubt); *Roybal v. Davis*, 148 F. Supp. 3d 958, 1114–15 (S.D. Cal. Dec. 2, 2015) (rejecting habeas claim presenting substantially similar arguments regarding the constitutionality of California's death penalty statute).

   As with Claim 18 discussed above, Petitioner argues only conclusively that California's death penalty law contravenes the federal constitution, and Petitioner does not raise any arguments to call into question the Ninth Circuit precedent discussed above. *See* Pet'r Br. at 29. Accordingly, the California Supreme Court was not unreasonable in rejecting Petitioner's arguments regarding the constitutionality of California's death penalty law. Claim 19 must be denied.

## H.     Claim 20

   In Claim 20 of Petitioner's federal habeas petition, Petitioner asserts that the death penalty was imposed against him because Petitioner was "an impoverished, African-American male." Pet'r Br. at 29–30. According to Petitioner, "[d]uring the period from 1977–1994, the Alameda County District Attorney's Office applied no consistent permissible criteria in its charging decisions with respect to those cases in which it sought a penalty of death" and disproportionately sought the death penalty in cases involving impoverished African-American males. Pet. at 335. Petitioner raised this claim to the California Supreme Court on direct review, and the California Supreme Court concluded that the prosecution properly exercised its discretion. *See Marks*, 31 Cal. 4th at 237.

   Under clearly established federal law, prosecutorial discretion "is subject to constitutional

constraints," including the constraint that the prosecutor may not violate equal protection by resting prosecutorial discretion on "'an unjustifiable standard, such as race, religion, or other arbitrary classification.'" *Walker v. Davis*, 2016 WL 1701790, at *8 (N.D. Cal. Apr. 28, 2016). (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)). "Courts presume that prosecutors have properly discharged their official duties," and to overcome this presumption a "criminal defendant must present 'clear evidence to the contrary.'" *Id.* (quoting *Armstrong*, 517 U.S. at 465)). "Unsupported allegations of selective prosecution are not enough." *Id.* (citing *United States v. Davis*, 36 F.3d 1424, 1433 (9th Cir. 1994)). "To establish a prima facie case of selective prosecution, the claimant must show that the prosecutorial policy: (1) had a discriminatory effect; and (2) was motivated by a discriminatory purpose." *Id.* (citing *Armstrong*, 517 U.S. at 465).

The California Supreme Court was not unreasonable in rejecting Petitioner's claim that the Alameda County District Attorney's Office sought the death penalty against Petitioner because of Petitioner's race, gender, or socio-economic status. Petitioner largely offers only conclusory and unsupported assertions that the Alameda County District Attorney's Office took Petitioner's race, gender, and socio-economic status into account in seeking the death penalty. *See* Pet. at 333–35. As set forth above above, "[u]nsupported allegations" are not enough to establish a prima facie case of selective prosecution. *See Walker*, 2016 WL 1701790, at * 8–10 (rejecting similar allegations as "without factual support" and thus not sufficient to warrant habeas relief). Other than these unsupported and conclusory allegations, the only evidence cited by Petitioner in support of Claim 20 is a law review Note, which was published in 1988, that discusses general empirical studies that the death penalty is imposed on African Americans with disproportionate frequency. *See* Pet. at 333 (citing Note, "Developments in the Law, Race and Criminal Process, 101 Harv. L. Rev. 1472, 1525–26 (1988)). However, this general statistical evidence is not sufficient to show that purposeful racial discrimination played a role in Petitioner's case. *See Ochoa v. Davis*, 2016 WL 3577593, at *115 (C.D. Cal. June 30, 2016) (denying habeas claim premised on racial basis in imposing the death penalty where Petitioner cited only to "studies that include[d] no proof

22

whatsoever of a pattern of racial differentiation in the imposition of the death penalty in the State

of California," and where Petitioner had "presented no evidence that purposeful racial

discrimination played a role in any aspect of this case").

Accordingly, because Petitioner offered only conclusory and unsupported assertions that

Petitioner's race, gender, and socio-economic status was taken into account by the Alameda

County District Attorney's Office in seeking the death penalty, the California Supreme Court was

not unreasonable in denying Petitioner's claim. *See Walker*, 2016 WL 1701790, at *10 (finding

Petitioner's allegations of selective prosecution to be "without factual support," and thus "it was

not unreasonable for the California Supreme Court to conclude" that Petitioner had not established

a selective prosecution claim). Claim 20 must be denied.

## I. Claim 21

In Claim 21 of Petitioner's federal habeas petition, Petitioner asserts that he is entitled to

habeas relief "because he is mentally ill and international law bars imposition of the death penalty

on a mentally disordered individual." Pet'r Br. at 30. Petitioner raised this claim to the California

Supreme Court in his state habeas petition, and the California Supreme Court denied this claim on

the merits without explanation. *See* AG023690 ("All other claims set forth in the petition for writ

of habeas corpus are denied. Each claim is denied on the merits."). Because the California

Supreme Court did not provide reasons for its denial of Petitioner's claim, the Court must

determine what arguments or theories could have supported the California Supreme Court's

decision. *See Richter*, 562 U.S. at 102 ("Under § 2254(d), a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's decision.").

The Court then "must ask whether it is possible fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding in a prior decision" of the United States

Supreme Court. *Id.*

The California Supreme Court was not unreasonable in rejecting Petitioner's claim that

international law prohibits Petitioner's execution because Petitioner is mentally disabled. *See* Pet.

at 343–51. Petitioner bases Claim 21 on the same evidence that Petitioner alleged in support of

23

Petitioner's *Atkins* claim and Petitioner's competency claims. *See* Pet. at 336–50. However, this Court has already examined the evidence in support of Petitioner's *Atkins* claim and Petitioner's competency claims, and this Court found that the California Supreme Court did not make an unreasonable determination of facts or unreasonably apply federal law in rejecting these claims. *Marks*, 31 Cal. 4th at 960, 981 (finding the California Supreme Court did not make an unreasonable determination of the facts or unreasonably apply federal law in rejecting Petitioner's *Atkins* claim or Petitioner's claim that he received an inadequate competency hearing); *Marks v. Davis*, 2016 WL 5395962, at *4 (N.D. Cal. Sept. 27, 2016) (finding the California Supreme Court did not make an unreasonable determination of the facts or unreasonably apply federal law in rejecting Petitioner's claim that he was, in fact, incompetent to stand trial). Petitioner does not argue that international law differs from federal law with regards to how mental illness is determined for purposes of the death penalty. Indeed, Petitioner's only argument in support of Claim 21 is the conclusory sentence that Petitioner "is entitled to relief because he is mentally ill and international law bars imposition of the death penalty on a mentally disordered individual." Pet'r Br. at 30.

Moreover, this Court and other courts to have previously considered the issue have rejected habeas claims premised on the argument that the petitioner's death sentence violates international law. *Ervin*, 2016 WL 3253942, at *12 (collecting and discussing cases). For example, in *Rowland v. Chappell*, 902 F. Supp. 2d 1296, 1339 (N.D. Cal. 2012), the district court concluded that "petitioner cannot demonstrate that any claim of a violation of international law is even cognizable on federal habeas review, given that such review is designed to address claims that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States." Accordingly, for this additional reason, the California Supreme Court was not unreasonable in rejecting this claim. Claim 21 must be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Claims 14 through 21. Because Petitioner's arguments as to Claims 14 through 21 are unavailing, Petitioner's request for a federal evidentiary

24

hearing as to Claims 14 through 21 is also DENIED. *See Sully*, 725 F.3d at 1075 ("[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief.").

**IT IS SO ORDERED.**

Dated: June 27, 2017

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 11-CV-02458-LHK
ORDER DENYING CLAIMS 14 THROUGH 21